790 P.2d 1033
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**John Wilson BRAZEAL,
Defendant–Appellant.**

No. 11505.

Court of Appeals of New Mexico.

Feb. 1, 1990.

Certiorari Denied March 19, 1990.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

The public defender was appointed to represent defendant one week before his retrial on a charge of receipt, transportation or possession of a firearm by a felon, NMSA 1978, Section 30–7–16 (Cum.Supp. 1989). The day before trial, defense counsel, claiming insufficient time for preparation, requested a continuance. The district court denied the motion. Defendant appeals his conviction on the grounds that: (1) the district court erred in denying the continuance, and (2) he received ineffective assistance of counsel at trial. We affirm.

## 1. BACKGROUND

Because the validity of defendant's claims turns on the specific circumstances of the case, we review those circumstances in detail. We begin with a summary of the evidence at defendant's second trial; then we describe the procedural history.

### A. *Evidence at Trial*

Steve Lambert testified that he, Ted Moore, and Jimmy Spears were at Spears' house on February 1, 1988, when defendant arrived. Defendant began talking to the others in the kitchen, then said he needed to talk to Spears. Defendant seemed upset. When words were exchanged between defendant and Spears, Lambert left the kitchen and entered the dining room. He saw defendant and Spears with their hands on each other, fighting. He heard a pistol go off and saw a gun. Defendant's hand was on the grip, Spears' was on the barrel. He and Moore intervened; defendant, or both Spears and defendant, handed the gun to Moore, who unloaded it. The gun was a large caliber weapon, a .44 or .45. On cross-examination by the public defender, Lambert admitted that both men were holding the gun and that he did not know whose gun it was. He saw a hole in the wall, but did not know if it was caused by a bullet.

Spears testified that he and defendant had an argument and a scuffle at his home while Moore and Lambert were there. The fight started in the kitchen. He and defendant wrestled. He believed some kind of weapon was involved; he did not know what it was, but it came from defendant's coat. He did not at any time see defendant with a gun in his hand. He had seen defendant with a .44 or .41 caliber magnum months before. Defendant owned a leather holster. Spears did not have a pistol with him at the time. During the scuffle, he heard a loud noise. He did not know what it was. He came to in the hospital.

He did not recall talking to Officer Steve Groves that night, but he remembered telling Detective Ron Shoemake the next day that defendant had a gun and a shoulder holster. He said, however, that he told Shoemake that only because it was what his girl friend and Lambert had told him. He also admitted telling Shoemake that during the argument he had asked defendant to go outside with him to settle the dispute and in response defendant had pulled a gun. The prosecutor offered Spears' preliminary hearing testimony, in which Spears said that (1) he had asked defendant, "Did you bring your gun today, John?" and (2) defendant had the gun, a .41 magnum revolver, in a shoulder holster. On cross-examination Spears testified that he did not know whether defendant pulled a gun. He stated that when he spoke to Shoemake the morning after his release from the hospital, he was still drowsy from medication. He added that because of a head injury sustained after the incident, his memory of the incident was almost gone.

Officer Groves testified that in the emergency room after the accident, Spears told him that defendant had pistol-whipped him. Defense counsel unsuccessfully attempted to exclude Groves' testimony that he had taken photos showing a bullet hole in a kitchen cabinet at the scene of the fight. On cross-examination Groves admitted that he never found a bullet and that he could not establish the date that the hole was made, only that it was less than six months old. Groves also admitted that although a large caliber gun makes a loud noise and the nearest house was only thirty feet away, he never interviewed any neighbors.

Moore testified that after defendant arrived at Spears' home, there was a heated argument between Spears and defendant, including a wrestling match over a pistol. He did not know which man had the gun first. Defendant's hand was toward the butt of the gun and Spears' hand was around defendant's hand. He denied telling Detective Shoemake that defendant pulled the gun. He testified that he took the gun from both men, although at the preliminary hearing he had testified that he got it from defendant. He unloaded the gun, a large caliber revolver, and put it in his car. He never saw a shoulder holster and had not seen defendant in possession of the gun before. He did not recall a prior statement that he had given the gun back to defendant.

Detective Shoemake testified that Moore had told him that defendant had reached inside his own jacket and pulled out a .41 magnum. Also Moore told him that he gave the gun back to defendant. After Spears was released from the hospital, Spears told Shoemake that defendant had produced the gun. Shoemake also testified that examination of Spears' house revealed plants overturned, blood on the wall, and a bullet hole in a kitchen cabinet. On cross-examination defense counsel established that Moore gave his statement to Shoemake shortly after having dental work performed, apparently suggesting that the statement was unreliable.

Officer Brian Smith testified that he arrested defendant and found a shoulder holster, and .41 and .44 magnum ammunition in a locked metal box in the bed of defendant's pickup. On cross-examination Smith admitted that he did not know to whom the holster or ammunition belonged.

Defendant stipulated to his prior felony conviction and presented no evidence. The trial was completed in one day.

### B. *Procedural Background*

Defendant's first trial, conducted on September 12, 1988, ended in a mistrial. The same witnesses testified as in the second trial. Private counsel represented defendant at the first trial, but he was permitted to withdraw from the case on October 17, 1988. On January 18, 1989, the district court set defendant's second trial for the week of February 27 on a trailing docket. On February 23 defendant filed an affidavit of indigency to obtain a public defender to represent him at the second trial; that same day the district court appointed a public defender to represent him. On February 27 the public defender filed a motion in limine to exclude evidence that cartridges were found in defendant's car and

to exclude testimony of events subsequent to Moore's taking the gun.

The day before trial, March 1, defense counsel filed a statement that he had not had enough time to investigate certain matters and therefore could not provide effective assistance of counsel. On the day of trial, defense counsel moved for a continuance for most of the reasons recited in his filed statement. He stated that he had listened to the tapes from defendant's preliminary hearing and first trial, and had made notes from the tapes, but had not had enough time to transcribe the tapes. The specific items he claimed a need to investigate were: (1) the medical records of Spears, to see if his head injury may have created delusions or perverted his memory; (2) the decibel level of the gun that was allegedly possessed and fired by defendant; (3) whether neighbors had heard a shot and, if so, why they had not reported it; (4) whether there was a bullet at the scene of the alleged offense; (5) whether Spears suffered powder burns or ear damage from the gunshot.

The trial judge denied the motion. The judge stated that it was not the general practice of defense counsel to transcribe tapes of prior proceedings, except for pertinent short portions. He observed that the case was simple, the testimony in the previous trial was clear, the previous trial had provided quite a bit of information, and the court was unaware of any pertinent medical evidence. The judge expressed his belief that defense counsel would do an outstanding job.

## 2. DISCUSSION

█ To begin, we note that defendant's claim of error in denial of a continuance is but one aspect of his claim of denial of effective assistance of counsel. Although he contends that denial of the continuance deprived him of "effective assistance of counsel, due process, and a fair trial," we fail to see what he adds to the claim of ineffective assistance by also including the claims of denial of due process and denial of a fair trial. The gist of his complaint about the denial of a continuance is that his

attorney was thereby handicapped in preparation for trial. Analysis in terms of due process or the right to a fair trial does not give us a different perspective on that complaint from what is provided by ineffective-assistance analysis. *See United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial."). Both the New Mexico and the United States Supreme Courts have treated the claim of an improper denial of a continuance as a claim of ineffective assistance of counsel. *State v. Taylor,* 107 N.M. 66, 752 P.2d 781 (1988); *United States v. Cronic.* Thus, we discuss together defendant's two claims: (1) improper denial of a continuance and (2) denial of effective assistance of counsel.

█ Also, we note that a claim of ineffective assistance of counsel could arise under either the sixth amendment to the United States Constitution (applied to the states via the Due Process Clause of the fourteenth amendment, *see Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) or Article II, Section 14 of the New Mexico Constitution. Yet because the New Mexico Supreme Court relied on *Strickland, Cronic,* and *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), when it considered the question of ineffective assistance of counsel in *Taylor,* we conclude that the test for ineffective assistance of counsel is identical under the federal and state Constitutions. In this opinion we will make no distinction between federal and state law.

Turning to the merits, we first consider whether denial of the continuance was a per se violation of defendant's constitutional rights—in other words, whether we can *presume,* in the absence of any consideration of the actual conduct of the trial, that defendant suffered from ineffective assistance of counsel because of the denial of a continuance. After denying such a presumption, we consider defendant's specific claims of shortcomings of his attorney. Even assuming that those shortcomings

constituted ineffective assistance of counsel, we find that defendant has not shown the prejudice required for reversal.

### A. *Presumption of Ineffective Assistance*

■ In general, the trial judge has broad discretion in ruling on a motion for continuance. "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy,* 461 U.S. at 11, 103 S.Ct. at 1616. *Accord State v. Taylor,* 107 N.M. at 73, 752 P.2d at 788. As a result, "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy,* 461 U.S. at 11–12, 103 S.Ct. at 1616 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

■ Moreover, appellate courts will not presume denial of effective assistance of counsel because of the trial judge's refusal to grant a continuance unless, under the circumstances, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *United States v. Cronic,* 466 U.S. at 659–60, 104 S.Ct. at 2047. Such was the case in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the defendants indicted for a highly publicized capital offense received no counsel until the day of trial. The Supreme Court "did not examine the actual performance of counsel at trial, but instead concluded that under these circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *United States v. Cronic,* 466 U.S. at 660–61, 104 S.Ct. at 2048 (footnote omitted).

■ *Powell,* however, does not suggest that a presumption of prejudice should be common. It presented egregious circumstances. A presumption of ineffectiveness arising from refusal to grant a continuance is justified in a very limited class of cases. To illustrate, *Cronic* cited with approval *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), in which the Supreme Court affirmed a conviction in a capital case in which defense counsel was appointed less than three days before the trial on a charge of committing a murder that had occurred six years earlier. *Cronic* also cited with approval *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in which the Court refused to find ineffectiveness of counsel although the defendant did not meet with the attorney assigned to represent him at his retrial until a few minutes before the second trial. Similarly, in *State v. Nieto,* 78 N.M. 155, 429 P.2d 353 (1967), where counsel was employed only six days before trial, the defendant's conviction for selling marijuana was upheld despite the denial of a continuance. *See United States v. Rodgers,* 755 F.2d 533 (7th Cir.) (counsel appointed two days before jury selection and four days before actual trial), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985).

This is not to say that trial judges should ride roughshod over defendants who need continuances for legitimate purposes. We expect district courts to exercise their discretion with full consideration of the rights of defendants. Still, except in exceptional circumstances, we will not ignore the actual conduct of the trial and presume that the defendant has suffered prejudice from ineffective assistance of counsel due to the failure of the trial judge to grant a continuance.

■ Such exceptional circumstances are not present here. First, we consider the time available for preparation. Although a week is a short time to prepare for a felony case, this was a simple case, defense counsel was experienced, and defense counsel was greatly aided in preparation by the prior work on the case. Defendant does

not allege that the performance of his counsel at his first trial was ineffective. Counsel appointed to represent defendant at his second trial had the advantage of being able to listen to the preliminary hearing and the testimony of every state witness at the prior trial. The situation seems more favorable to defendant here than was the situation in *Cronic*. In *Cronic* the defendant was indicted on mail fraud charges involving more than $9,000,000 in checks allegedly kited between banks in Florida and Oklahoma during a four-month period. Defense counsel, a young lawyer with a real estate practice who had no jury-trial experience, was allowed only twenty-five days to prepare for trial. Yet, a unanimous Supreme Court held that there was no presumption of prejudice. Inquiry into the actual performance of counsel at trial was necessary. We will not presume prejudice in this case solely from the short time between the appointment of defense counsel and the trial.

■ Nor do the reasons expressed by defense counsel for needing a continuance create a presumption that defendant would be prejudiced at trial by ineffective assistance of counsel. Given the particular matters that defense counsel wished to pursue, we cannot say that failure to pursue them would necessarily prejudice defendant. The relevance, to say nothing of the importance, of the facts defense counsel hoped to establish cannot be evaluated without knowing the specifics of the evidence at trial. A fact that may appear to be worthwhile, even essential, to pursue may, in the light of the evidence at trial, be totally irrelevant. Of course, when, as in *March v. State*, 105 N.M. 453, 734 P.2d 231 (1987) (denial of due process resulting from district court's refusal to grant continuance and other actions foreclosing the defendant from raising mental-incapacity defense), the district court precludes the defendant from pursuing a likely defense, examination of what happened at trial could not assist in the determination of whether the defendant suffered prejudice from denial of a continuance to gather evidence concerning the defense. But that is not the situation here.

B. *Specific Claims of Ineffective Assistance*

■ There being no presumption of prejudice in this case, defendant must establish his claim of prejudicial ineffective assistance of counsel in light of the actual conduct of his trial. In performing this examination, we do not review the record to see how many objections were raised by defense counsel or how clever was the cross-examination of the state's witnesses. To be effective, counsel need not be a wizard. Some cases are simply hard to defend. There may be very little that counsel can accomplish at trial. That does not make counsel ineffective. As the United States Supreme Court has said, "[T]he Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, 466 U.S. at 656 n. 19, 104 S.Ct. at 2045 n. 19. In short, effectiveness is not measured by mindlessly adding the number of motions, objections, and questions raised by defense counsel. Instead, to establish ineffective assistance of counsel, the defendant must point to specific lapses by his trial counsel.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066.

Moreover, even if counsel's performance was constitutionally defective, the defendant must still affirmatively prove prejudice. *Id.* at 693, 104 S.Ct. at 2067. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. *Accord State v. Taylor.*

We need not consider the two parts of this test in the above order—deficient performance and then prejudice.

[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland v. Washington*, 466 U.S. at 697, 104 S.Ct. at 2069. We adopt that approach in this case.

■ The only "lapses of counsel" identified by defendant were those allegedly caused by denial of a continuance. These were the failures: (1) to obtain Spears' medical records to support a claim that Spears had memory problems; (2) to test the decibel level of the gun allegedly possessed and fired by defendant; (3) to interview neighbors to see if they heard any shots; (4) to search the site of the fight for a bullet; and (5) to determine if Spears had powder burns or ear damage from the gunshot.

Even if we assume that competent counsel should have done what defendant's counsel said he did not have time to do, we do not find the necessary prejudice. (1) With respect to Spears' medical records, medical evidence that Spears had a memory problem would have been cumulative. Spears himself testified that he had a memory problem. Given Spears' testimony at the preliminary hearing and his statement to the police officer the day after the incident, we fail to see how medical evidence of a memory problem would have substantially assisted the defense. (2) and (3) Given the nature of the testimony at trial, we fail to see how it would help defendant to test the decibel level of the gun or to interview neighbors to see if they heard a shot. Defendant has not explained why there is a "reasonable probability" that the jury would not convict if a neighbor testified that he or she heard, or did not hear, a shot during the time of the incident. (4) Similarly, we doubt that the jury would have been influenced by the absence of a bullet in the alleged bullet hole more than a year after the incident, particularly when Officer Groves had testified that he had been unable to locate a bullet during his inspection of the crime scene shortly after the incident. (5) Finally, defendant does not explain how the absence or presence of powder burns or hearing loss suffered by Spears would create substantial doubt as to the truth of the testimony implicating defendant. In short, we do not believe that the probability that the suggested investigation would change the result of the trial is sufficient to undermine confidence in the outcome. Our determination that the evidence sought would not have been particularly probative with respect to any material issues at trial makes unnecessary a consideration of whether defendant must establish that the evidence sought would actually have been acquired if the continuance had been granted. *Compare March v. State* (for alleged violation of due process, prejudice from denial of opportunity to present potential defense of incapacity is sufficiently shown by medical records of (1) prior schizophrenia and (2) cancerous brain tumor) *with United States v. Rodgers* (to establish prejudice from denial of continuance sought to subpoena and interview witness, defendant must show that witness was willing to testify and would have given substantial favorable evidence); *Meeks v. Bergen*, 749 F.2d 322, 328–29 (6th Cir.1984) (no prejudice established by defense counsel's failure to produce expert psychological testimony at trial, because at habeas corpus hearing petitioner did not produce expert testimony that she in fact suffered from battered wife syndrome). *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.10(d) (Supp.1989), at 49–50 (discussing the prejudice element).

Therefore, we conclude that defendant is not entitled to reversal of his conviction on the ground of denial of effective assistance of counsel.

## 3. CONCLUSION

For the reasons stated above, we affirm defendant's conviction.

MINZNER and APODACA, JJ., concur.