{45} For the reasons stated, I concur only in the result.

2007-NMCA-045

156 P.3d 725

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard Anthony CONTRERAS, a/k/a
Richard A. Contreras, a/k/a/ Richard
Contreras, Defendant–Appellant.**

**No. 25,526.**

Court of Appeals of New Mexico.

Feb. 26, 2007.

Certiorari Granted, No. 30,289,
April 16, 2007.

Gary K. King, Attorney General Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM for Appellee.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate, Defender Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} A jury convicted Richard Anthony Contreras (Defendant) on several drug charges after he sold cocaine to an undercover police officer. Following trial, the district court sentenced Defendant to twenty-six years and six months imprisonment based in part on its finding that Defendant was a habitual offender with three prior felony convictions. Defendant raises several issues on appeal, including his contention that the district court improperly enhanced his sentence based on the 1989 conviction of his brother, Robert Anthony Contreras. We agree with Defendant that the district court erred in this regard. We therefore vacate Defendant's sentence and remand to the district court for resentencing. In all other respects, we affirm.

## BACKGROUND

{2} The facts of this case are not in dispute. On July 19, 2001, Defendant met with undercover agents John Vigil and Albert Mora of the New Mexico State Police at a motel in Doña Ana County. After the agents made contact with Defendant through one of Defendant's acquaintances, Defendant introduced himself to the agents and got into their truck. Defendant then directed the agents to a residence. While en route to the residence, Defendant told the agents several things about himself, including that he had recently been released from prison. Upon arrival, Defendant and Agent Mora went into the residence while Agent Vigil remained in the truck. Defendant's supplier arrived at the residence several minutes later.

{3} Defendant left Agent Mora for a minute and then returned. Defendant then asked Agent Mora to follow him into the restroom. Once in the restroom, Defendant showed Agent Mora a clear plastic bag containing what the agent believed to be approximately one-half ounce of cocaine. Defendant dumped the cocaine onto a counter top, separated some of it and placed the separat-

ed portion into another plastic bag for Agent Mora. Agent Mora gave Defendant $120 cash in exchange for the cocaine, which Agent Mora believed to weigh slightly over four grams. Defendant kept the remainder of the cocaine.

{4} Once the transaction was complete, Defendant and Agent Mora came out of the residence and got back into the truck where Agent Vigil was waiting. The agents drove Defendant back to the motel where they originally met and dropped him off. Defendant told the agents where they could find him if they needed any more cocaine. The agents later verified that a "Richard Contreras" had recently been released from prison and acquired a mug shot of him from the Corrections Department. A forensic laboratory technician confirmed that the substance Defendant sold to Agent Mora was cocaine.

{5} Defendant was indicted on March 7, 2003, and charged with trafficking cocaine, contrary to NMSA 1978, § 30–31–20(A)(2) (1990) (amended 2006); conspiracy to commit cocaine trafficking, contrary to NMSA 1978, § 30–28–2 (1979) and Section 30–31–20(A)(2); and possession of cocaine, contrary to NMSA 1978, § 30–31–23 (1990) (amended 2005). Several weeks later, Defendant was arraigned and entered a plea of not guilty. On April 14, 2003, Defendant's attorney entered his appearance. The case went to trial on September 22, 2003.

{6} Anticipating a defense of mistaken identity, the State made a pretrial motion to allow the agents to testify regarding their verification of Defendant's comment that he had recently been released from prison. The court indicated that it would be inclined to allow such testimony if Defendant were to assert mistaken identity. Defense counsel noted immediately in his opening statement that "a lot of time had passed" and "a lot of memories have faded" since the alleged drug deal took place. He went on to state that "[t]he agent involved in this case was involved in some 171 cases, there's so many cases that . . . he could have made a mistake. His memory could be faulty and he may not have . . . the right defendant in this case."

{7} Agent Vigil testified at the trial and identified Defendant in the courtroom. On direct examination, Agent Vigil stated that he had been sitting next to Defendant in the truck on the day of the alleged drug deal and that he clearly saw Defendant's face. Shortly thereafter, the following exchange took place between the prosecutor and Agent Vigil:

Q: What did the defendant tell you when you got back to the Townhouse [motel]?

A: I can't really recall the conversation, but we just talked about odd things. He mentioned stuff about himself, him spending time in prison.

Defense counsel objected and the court sustained the objection. However, defense counsel revisited the issue of mistaken identity on cross-examination:

Q: And some two years later you're saying that based on that one time that you saw him that you can identify him, Richard Contreras, as being one in the same [as the] person in the courtroom today?

A: Correct.

Q: Out of 171 people who were arrested, can you point out one individual?

A: Correct.

Q: Quite a memory; isn't it?

A: Well, sir, number one, we've got to do a report as soon as we can get it done. And during our investigation we try [to] obtain all these photos of these individuals.

Defense counsel later asked:

Q: So in the year you had this undercover operation going you only made contact with a Richard Contreras [on] July 19, 2001, and no other time?

A: That is correct.

{8} Following this exchange, the State asked for a bench conference. The State renewed its pretrial motion, arguing that Defense Counsel had raised the issue of mistaken identity, thereby opening the door to introduction of the agents' testimony regarding their verification of Defendant's comments about his release from prison. Defense counsel responded that the court should not allow such testimony because it would be more prejudicial than probative. The district

court granted the State's motion, ruling that defense counsel's opening statement and questions on cross-examination clearly put identity at issue.

{9} On redirect examination, the State asked Agent Vigil how he was able to identify Defendant. Agent Vigil testified that his memory of the events of July 19, 2001, was good. He also stated that he was able to identify Defendant because they were sitting next to each other in the truck and they were talking to each other. Additionally, Agent Vigil explained that Defendant had said his name was Richard Contreras and that he had been in prison, which Agent Vigil later verified.

{10} Agent Mora testified following Agent Vigil. On direct examination, Agent Mora explained in further detail how the agents verified Defendant's identity:

Q: How were you able to verify that Mr. Contreras had been in prison?

A: Due to the fact that he provided me his full name, Richard Contreras, and advised me he spent time [in prison]. I had our intelligence center contact Albuquerque and obtain a photograph of Mr. Contreras, an arrest photo, stating his full name and photo out of Albuquerque.

Q: Also, did you see a certified pen packet?

A: Yes, sir, I did.

The State moved to have the pen packet admitted as evidence. Defense counsel objected, arguing that the pen packet was being introduced to show that Defendant had committed prior crimes and that this evidence was more prejudicial than probative. The district court reiterated its prior ruling regarding identity and overruled the objection. The pen packet included a mug shot in which Defendant appears to be wearing a blue prison jumpsuit. Agent Mora told the prosecutor that he used this photograph to confirm Defendant's identity.

{11} Once the State rested and the jury was excused, defense counsel moved for a mistrial, arguing again that the introduction of the prison photo and mention of the pen packet was more prejudicial than probative. The district court denied the motion, stating that the information was properly brought in because identity was at issue. The jury found Defendant guilty on all three charges.

{12} The State filed a supplemental criminal information on October 28, 2003, alleging that Defendant was a habitual offender under NMSA 1978, § 31–18–17 (2002) (amended 2003). The district court held a hearing on the supplemental criminal information on November 26, 2003. At the hearing, the State introduced six exhibits purporting to evidence Defendant's prior felony convictions. Exhibit 1 contains the judgment and sentence, in addition to the above-mentioned pen packet, from Defendant's most recent convictions, matters CR–97–0043 and CR–97–0274. Exhibit 2 is a supplemental information from matter CR–97–0043 and lists Defendant's prior offenses as matters CR–93–1502, CR–89–0157, and CR 46,817, all of which were felony convictions in New Mexico. Exhibits 3 and 4 are the judgment and sentence, and repeat offender plea, respectively, from CR–93–1502. Exhibits 5 and 6 are the repeat offender plea and partially suspended order and commitment, respectively, for CR–89–0157, a matter actually involving Robert Anthony Contreras, Defendant's brother. Apparently unaware of this fact, defense counsel did not object to the introduction of Exhibits 5 and 6. The State did not introduce any documents relating to CR 46,817 because it did not believe that CR 46,817 fell within the ten-year limit under Section 31–18–17(D) (2002).

{13} The State argued that Defendant had three prior convictions, including matter CR–89–0157, that were eligible for sentencing enhancement under Section 31–18–17 (2002). The district court agreed with the State and sentenced Defendant to nine years on Count One, three years on Count Two, and eighteen months on Count Three, with an eight-year habitual offender enhancement on each count. The court ruled that Counts One and Two would run concurrently, while Count Three would run consecutive to Counts One and Two, for a total of twenty-six years and six months incarceration.

{14} Defendant brings the present appeal, arguing that: (1) insufficient evidence exists to support the district court's enhancement

of Defendant's sentence, (2) Defendant's convictions for trafficking cocaine and possession of cocaine violate double jeopardy, (3) the district court erred when it allowed the State to project Defendant's mug shot and mention Defendant's pen packet during trial, and (4) Defendant received ineffective assistance of counsel. We address each of Defendant's contentions in sequence.

## DISCUSSION

### 1. Habitual Offender Sentencing

{15} Defendant's claim that there is insufficient evidence to support his habitual offender enhancement presents a question of fact that we review for substantial evidence. *State v. Sandoval*, 2004–NMCA–046, ¶ 8, 135 N.M. 420, 89 P.3d 92. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State v. Elliott*, 2001–NMCA–108, ¶ 36, 131 N.M. 390, 37 P.3d 107 (internal quotation marks and citation omitted). When reviewing for substantial evidence, we give deference to the district court's findings and will not substitute our judgment for that of the district court. *Sandoval*, 2004–NMCA–046, ¶ 8, 135 N.M. 420, 89 P.3d 92; *Elliott*, 2001–NMCA–108, ¶ 36, 131 N.M. 390, 37 P.3d 107. In determining the existence of a prior felony conviction for the purpose of a habitual offender enhancement, the district court must apply a preponderance of the evidence standard. *Elliott*, 2001–NMCA–108, ¶ 35, 131 N.M. 390, 37 P.3d 107. "At sentencing, the State [bears] the burden of making a prima facie case showing prior valid felony convictions, and Defendant then ha[s] the right to offer contrary evidence." *Id.*

{16} In the present case, the State concedes that it erroneously introduced exhibits from matter CR–89–0157, which involved Defendant's brother. It is unclear from the record why neither the State, nor defense counsel, nor the district court observed that these exhibits contained a different name, date of birth, and social security number from that of Defendant. Curiously, the State verbally noted the matching names, dates of birth, and social security numbers when it introduced the exhibits relating to Defendant's other prior convictions, but failed to do

so with respect to the exhibits from matter CR–89–0157.

{17} Needless to say, the State did not meet its burden of making a prima facie case showing a valid prior felony conviction with regard to matter CR–89–0157. Therefore, substantial evidence did not support the district court's enhancement of Defendant's sentence. *See Woods v. State*, 654 N.E.2d 1153, 1157 (Ind.Ct.App.1995) (holding that evidence was insufficient to support defendant's habitual offender enhancement where state introduced documents evidencing the conviction of another defendant of different race and age). We now turn to Defendant's claim that his convictions for possessing cocaine and trafficking cocaine violate double jeopardy.

### 2. Double Jeopardy

{18} Double jeopardy claims are questions of law that we review de novo. *State v. Mora*, 2003–NMCA–072, ¶ 16, 133 N.M. 746, 69 P.3d 256. Although Defendant did not raise the issue below, "[t]he defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30–1–10 (1963). Defendant does not invoke the New Mexico Constitution as a source of his protection against double jeopardy; we therefore focus exclusively on the protections that the Fifth Amendment to the United States Constitution provides. *See Swafford v. State*, 112 N.M. 3, 7 n. 3, 810 P.2d 1223, 1227 n. 3 (1991) (addressing defendant's double jeopardy claim exclusively under the federal constitution where defendant used the term "double jeopardy" without reference to either the state or the federal double jeopardy clauses); *see also State v. Vaughn*, 2005–NMCA–076, ¶¶ 6–8, 137 N.M. 674, 114 P.3d 354 (applying a federal constitutional analysis where the defendant failed to preserve his state constitutional claim).

{19} "The constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *Mora*, 2003–NMCA–072, ¶ 17, 133 N.M. 746, 69 P.3d

256 (internal quotation marks and citation omitted). "Multiple punishment problems can arise from both 'double-description' claims, in which a single act results in multiple charges under different criminal statutes, and 'unit-of-prosecution' claims, in which an individual is convicted of multiple violations of the same criminal statute." *State v. Bernal,* 2006–NMSC–050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant in the present case asserts that his single act of selling cocaine to Agent Mora resulted in multiple charges— i.e., trafficking of cocaine and possession of cocaine—under different criminal statutes. We therefore apply a double-description analysis to Defendant's claim.

{20} We address double-description claims using the two-part test set forth by our Supreme Court in *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34. Under *Swafford,* we first examine whether the defendant's conduct was unitary, meaning that "the same criminal conduct is the basis for both charges." *Bernal,* 2006–NMSC–050, ¶ 9, 140 N.M. 644, 146 P.3d 289. "If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *Id.* If the conduct is unitary, the second prong of the *Swafford* test requires us to determine "whether the legislature intended multiple punishments for the unitary conduct." *State v. Andazola,* 2003–NMCA–146, ¶ 15, 134 N.M. 710, 82 P.3d 77.

{21} In analyzing whether a defendant's conduct is unitary, we look to whether defendant's acts have "sufficient indicia of distinctness." *Id.* These indicia "include the separation between the illegal acts by either time or physical distance, the quality and nature of the individual acts, and the objectives and results of each act." *Id.* ¶ 16 (internal quotation marks and citation omitted). "Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts." *Id.* (internal quotation marks and citation omitted). Furthermore, we will not find that a defendant's conduct is unitary where the defendant completes one of the charged crimes before committing the other.

*See Bernal,* 2006–NMSC–050, ¶ 11, 140 N.M. 644, 146 P.3d 289 (holding that defendant's conduct was not unitary where his attempted robbery of the victim began after he completed the murder of the victim's boyfriend). Finally, the question of whether a defendant's conduct is unitary is not limited by the State's legal theory, "but rather depends on the elements of the charged offenses and the facts presented at trial." *State v. Stefani,* 2006–NMCA–073, ¶ 31, 139 N.M. 719, 137 P.3d 659. "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco,* 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted).

{22} In the present case, Defendant's actions in possessing and trafficking cocaine bear sufficient indicia of distinctness to support a finding that they are not unitary. The State pointed out to the jury during closing argument that: (1) Defendant had possession of the cocaine when he got it from his supplier, (2) Defendant then brought the cocaine into the bathroom and put it on the counter so that he could separate a portion to sell to Agent Mora, and (3) once he completed the sale with Agent Mora, Defendant kept a portion of the cocaine. The State thus provided the jury with sufficient factual bases for finding that Defendant possessed the cocaine both before and after he sold some of it to Agent Mora.

{23} Accordingly, we conclude that Defendant's conduct was not unitary. Given that the State did not limit its legal theory to the facts constituting the trafficking offense and, to the contrary, provided the jury with sufficiently distinct factual bases upon which it could base Defendant's conviction for possession, it is extremely unlikely that the jury based its verdict on a theory that Defendant only possessed the cocaine at the time he sold it to Agent Mora. *Compare id.* ¶ 11 (applying presumption of unitary conduct where the State limited its legal theory to facts constituting both possession of a controlled substance and tampering with evidence, even though the jury could have found

independent factual bases for each act); *see also Stefani*, 2006–NMCA–073, ¶ 32, 139 N.M. 719, 137 P.3d 659 (expressing uncertainty regarding whether the jury used independent factual bases to find defendant guilty of trafficking methamphetamine by manufacture and possession of drug paraphernalia, yet noting that the State could limit the scope of each charge to independent factual bases on remand to avoid double jeopardy concerns). Our holding that Defendant's conduct was not unitary ends our inquiry and Defendant's double jeopardy claim fails. *Bernal*, 2006–NMSC–050, ¶ 9, 140 N.M. 644, 146 P.3d 289. We next address Defendant's claim that the district court committed reversible error in allowing the State to project Defendant's mug shot and mention Defendant's pen packet during trial.

### 3. Defendant's Motion for Mistrial

{24} We review a district court's admission of evidence for abuse of discretion. *State v. Armendariz*, 2006–NMSC–036, ¶ 6, 140 N.M. 182, 141 P.3d 526. "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted).

{25} Defendant contends that the admission of his mug shot and the mention of his pen packet during trial were unfairly prejudicial because it suggested to the jury that, because he had a prior conviction, he was likely to be guilty in the present case. Rule 11–404 NMRA governs the admission of evidence regarding a defendant's "other crimes, wrongs or acts" and provides that such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 11–404(B). However, such evidence may be admissible for other purposes, such as proof of identity. *Id.* Thus, "the issue . . . is whether there is a probative use of the evidence that is not based on the proposition that a bad person is more likely to commit a crime." *State v. Otto*, 2005–NMCA–047, ¶ 13, 137 N.M. 371, 111 P.3d 229, *cert. granted*, 2005–NMCERT–004, 137 N.M. 455, 112 P.3d 1112 (internal

quotation marks and citation omitted). Furthermore, the proponent of such evidence must "affirmatively demonstrate the consequential fact to which the proffered evidence is directed." *Id.* Once the proponent has made an adequate showing, the court must find that the probative value of the evidence is not substantially outweighed by the considerations set forth in Rule 11–403 NMRA. *Otto*, 2005–NMCA–047, ¶¶ 13–14, 137 N.M. 371, 111 P.3d 229.

{26} The identity exception to Rule 11–404(B) applies in the present case. Anticipating a defense of mistaken identity, the State made a pretrial motion to introduce testimony regarding the agents' verification of Defendant's identity using the booking photo and other information from his pen packet. The district court indicated that it would allow the evidence to come in if Defendant were to assert a defense of mistaken identity. Defense counsel did just that, questioning the agents' ability to remember Defendant during opening statements and during cross-examination. The State responded by renewing its motion to introduce the evidence of Defendant's prior conviction, not for the purpose of showing that Defendant was more likely to have committed the crimes alleged in the present case, but to attack Defendant's theory of mistaken identity. Therefore, the district court did not err in allowing the evidence so long as the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Rule 11–403.

{27} The introduction of Defendant's mug shot and pen packet was unquestionably prejudicial to him. However, this situation was of Defendant's own choosing; the district court warned Defendant that such evidence would come in were he to assert a defense of mistaken identity. Moreover, the pen packet and photo are highly probative of the agents' accurate identification of Defendant. Given our deferential standard of review regarding a district court's ruling under Rule 11–404(B), *see Otto*, 2005–NMCA–047, ¶ 10, 137 N.M. 371, 111 P.3d 229 ("We defer to the court's admission of Rule 11–404(B) evidence."), we cannot say that the district court's ruling in the present case is "clearly untenable or not justified by reason." *Wood-*

*ward,* 121 N.M. at 4, 908 P.2d at 234 (internal quotation marks and citation omitted). We therefore conclude that the district court did not err in denying Defendant's motion for a mistrial based on the introduction of the aforementioned evidence. We now turn to Defendant's claim that he received ineffective assistance of counsel.

## 4. Ineffective Assistance of Counsel

{28} A claim of ineffective assistance of counsel presents a mixed question of law and fact that we review de novo. *State v. Barnett,* 1998–NMCA–105, ¶ 13, 125 N.M. 739, 965 P.2d 323. Defendant has the burden of showing ineffective assistance of counsel. *State v. Baca,* 1997–NMSC–059, ¶ 24, 124 N.M. 333, 950 P.2d 776. In order to meet this burden, Defendant "must show that his attorney's conduct fell below that of a reasonably competent attorney and that the ineffective performance prejudiced him." *Id.* In order to establish his attorney's deficient performance, Defendant "must point to specific lapses by his trial counsel." *State v. Brazeal,* 109 N.M. 752, 757, 790 P.2d 1033, 1038 (Ct.App.1990). Furthermore, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 757–58, 790 P.2d at 1038–39 (alteration in original) (internal quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 758, 790 P.2d at 1039 (internal quotation marks and citation omitted). "If a defendant does not make such a showing, ... the presumption of effective assistance controls." *Baca,* 1997–NMSC–059, ¶ 24, 124 N.M. 333, 950 P.2d 776.

{29} Defendant claims that he received ineffective assistance of counsel because defense counsel did not have adequate time to prepare for trial. Defendant also asserts that defense counsel's apparent failure to examine the documents that the State introduced during the habitual offender hearing is further proof of defense counsel's "poor representation." Defendant's arguments are without merit.

{30} First, we note that Defendant's trial and habitual offender hearing were separate proceedings taking place over a month apart from one another. We have already addressed and prescribed a remedy for Defendant's claim regarding his improper habitual offender sentence enhancement. Even if we assume that defense counsel's performance in the habitual offender proceeding was deficient, Defendant cites no authority suggesting that a reviewing court can look to counsel's oversight in one proceeding to infer ineffective assistance of counsel in another. In other words, Defendant has failed to show that, but for defense counsel's deficient performance in the habitual offender proceeding, the result of the *trial*—which took place over a month earlier—would have been different. *See Brazeal,* 109 N.M. at 757–58, 790 P.2d at 1038–39. Accordingly, defense counsel's conduct at the habitual offender hearing cannot serve as the basis for an ineffective assistance claim with respect to the trial.

{31} Second, Defendant cites no authority suggesting that one weekend is, as a matter of law, an insufficient amount of time for counsel to prepare an adequate defense. To the contrary, defense counsel appears from the record to have been well-acquainted with the facts of this case and zealously challenged the agents' ability to identify Defendant well over two years following the alleged drug deal. More importantly, Defendant fails to point to any specific lapses by defense counsel during the trial. *See id.* at 757, 790 P.2d at 1038 (requiring a defendant to show specific lapses by counsel to establish deficient performance). Defendant therefore failed to carry his burden of demonstrating deficient performance. Accordingly, we reject Defendant's claim of ineffective assistance of counsel.

## CONCLUSION

{32} For the foregoing reasons, we affirm Defendant's convictions, vacate his sentence and remand to the district court for resentencing consistent with this opinion.

{33} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL E. VIGIL, Judge.