This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41289**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**STEVEN JOSHUA CANDELARIA**
**a/k/a STEVE JOSHUA CANDELARIA**
**a/k/a STEVE CANDELARIA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lucy Solimon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Brian Moffatt, Assistant Solicitor General
Alethia V.P. Allen, Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}**    Defendant Steve Candelaria appeals his convictions for one count of abuse of a child (no death or great bodily harm), contrary to NMSA 1978, Section 30-6-1(D) (2009);

one count of aggravated battery against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-16(C) (2018); and one count of aggravated assault against a household member with a deadly weapon, contrary to NMSA 1978, Section 30-3-13(A)(1) (1995). On appeal, Defendant argues that (1) Defendant's conviction for child abuse was not supported by sufficient evidence; (2) Defendant's convictions for aggravated battery and aggravated assault violate principles of double jeopardy; and (3) Defendant received ineffective assistance of counsel. For the reasons set forth below, we affirm.

## BACKGROUND

**{2}** Defendant's convictions arise from the murder of Luciano Montoya, Jr. (Victim) in 2020. Two days before the murder, Defendant and Raquel Martinez-Chavez, who had been in a relationship and had a one-year old son (Child) together, had an argument. As a result of the argument, Raquel stayed with Victim, her former romantic partner and with whom she also had children. The next day, Defendant and Raquel got into another altercation after Raquel went to Defendant's home to collect some items before she returned to Victim's apartment. On the day of the murder, Defendant and his brother, who were both armed with guns, went to Victim's apartment to "talk to [Raquel] about my son and about getting him." At the same time, Raquel was walking out to her car, which was parked in the alleyway behind Victim's apartment building, to get Child some clothes and a diaper. Defendant and his brother ran up to Raquel, pointing guns at her and yelling for her to get on the ground. Once Raquel was on her knees, Defendant struck Raquel on her head with his gun. As Defendant confronted Raquel, Victim came to the back gate of the apartment armed with a gun and Victim was killed. Bullets also struck the apartment building, with one bullet penetrating into Victim's apartment where Child was located. Defendant was later charged with Victim's murder.[1]

## DISCUSSION

**{3}** On appeal, Defendant argues that (1) the State failed to present sufficient evidence to support his child abuse conviction; (2) Defendant's convictions for both aggravated battery and aggravated assault result in double jeopardy; and (3) Defendant received ineffective assistance of counsel. We address each in turn.

## I.  Sufficiency of the Evidence

**{4}** First, Defendant contends that there was insufficient evidence to support his child abuse conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind

---

[1]Defendant and his brother were jointly charged and their cases were later severed. A jury convicted Defendant of second-degree murder with a firearm, in addition to the convictions which Defendant now appeals.

might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880. "[W]e view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Samora*, 2016-NMSC-031, ¶ 34 (internal quotation marks and citation omitted). We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Moreover, "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted). We therefore turn to the elements set forth in the instructions received by the jury.

**{5}** As is relevant to our analysis, the jury was instructed that, to find Defendant guilty of child abuse, it must conclude the following:

> 1. [Defendant] shot towards and into an apartment in which he knew [Child] was located;
>
> 2. By engaging in the conduct described in [p]aragraph 1, [Defendant] caused [Child] to be placed in a situation that endangered the life or health of [Child];
>
> 3. [Defendant] showed a reckless disregard without justification for the safety or health of [Child]. To find that [Defendant] showed a reckless disregard, you must find that [Defendant]'s conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [Child]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [Child].

Defendant argues that the jury lacked substantial evidence to conclude that (1) Defendant knew Child was present in the apartment; (2) Child's general proximity to gunfire caused a substantial and unjustifiable risk to Child's health or safety; and (3) Defendant did not intend for anyone to commit child abuse, nor is there evidence that Defendant fired the gunshot that entered the apartment. We disagree.

**{6}** First, there was sufficient evidence that Defendant knew Child was present in the apartment. Defendant concedes there was "at most circumstantial evidence that [Defendant] knew [Child] was in the apartment." Raquel testified that two nights before the shooting, she and Defendant had an argument causing her to take Child and stay at Victim's apartment. The next day, while Raquel was at Victim's apartment, she observed Defendant drive down the alleyway behind Victim's apartment. Defendant confirmed that he drove by Victim's apartment two times—and the second time

"[Defendant] had seen that [Raquel's] car was over there." At the same time he was driving past Victim's apartment, Defendant sent Raquel several text messages, including one stating that he was "glad" that she and Child were "ok" staying with Victim. Later that night, Raquel went to Defendant's home with Child to get some of her and Child's belongings before returning to Victim's apartment. Raquel testified that Defendant knew Child was with her. Defendant testified that, on the day of the shooting, he asked his brother to go with him to Victim's apartment so Defendant could talk to Raquel about getting Child from her. Defendant testified his brother agreed to go with him and they went to Victim's apartment in order to get Child. Based on the foregoing evidence, a reasonable fact-finder could logically infer that Defendant knew Child was in Victim's apartment at the time of the shooting. *See State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (elaborating the test for sufficiency of the evidence to include "substantial evidence of either a direct or *circumstantial* nature" (emphasis added)). Therefore, there was sufficient evidence to support the jury's conclusion that Defendant knew Child was present at Victim's apartment.

**{7}** Second, the State produced sufficient evidence that Defendant shot towards and into Victim's apartment. Defendant argues that, because the jury acquitted him of a charge of shooting at a dwelling or occupied building, in violation of NMSA 1978, Section 30-3-8(A) (1993), the jury believed that Defendant was shooting at Victim and not at the building. However, it is equally plausible that the jury did find that Defendant shot at the apartment, but acquitted Defendant of the shooting at a dwelling charge due to insufficient evidence of an element of that offense. "When a defendant argues that the evidence and inferences present two equally reasonable hypotheses, one consistent with guilt and another consistent with innocence, our answer is that by its verdict, the jury has necessarily found the hypothesis of guilt more reasonable than the hypothesis of innocence." *State v. Montoya*, 2005-NMCA-078, ¶ 3, 137 N.M. 713, 114 P.3d 393. In this case, based on the jury's verdict, the jury clearly found that Defendant shot at the apartment, and this conclusion is supported by substantial evidence. Testimony and ballistics evidence presented at trial established that Defendant and his brother fired in the direction of the apartment building, that several rounds hit the apartment building, and at least one round entered into Victim's apartment where Child was located. In fact, Defendant concedes that some rounds hit the apartment building and at least one round penetrated into the apartment. Thus, there was sufficient evidence to support the jury's determination that Defendant shot towards and into the apartment.

**{8}** Third, there was sufficient evidence that Child was placed in substantial danger when Defendant shot towards and into the apartment. Relying on *State v. Melendrez*, 2014-NMCA-062, 326 P.3d 1126, Defendant asserts that to prove he placed Child in substantial danger requires that he endangered particular and identifiable children such that the risk of injury was foreseeable, but that he did not see nor know that Child was inside Victim's apartment. *Melendrez* does not support Defendant's argument. In *Melendrez*, the defendant argued that his reckless driving "did not endanger particular and identifiable children, as required to support the conviction . . . but, instead, endangered the public as a whole." *Id.* ¶ 14 (citation omitted). This Court rejected the

defendant's argument, concluding that while "[t]he creation of a risk to the general public that only incidentally places a child or children in danger is not sufficient to support a conviction," there was sufficient evidence that the defendant had "created a substantial and foreseeable risk to particular children by driving into a group that contained nine children," when the "jury heard sufficient evidence to conclude that [the d]efendant knew or should have known that his conduct created a substantial and foreseeable risk of injury to the nine children that he drove toward." *Id.* ¶¶ 17-18. This Court further opined that "awareness of the presence of a child prior to the creation of the risk [is] dispositive because the risk to the child is, therefore, foreseeable." *Id.* ¶ 18. In this case, Child was present in Victim's apartment at the time of the shooting. Supporting Defendant's concession that there was circumstantial evidence that he knew Child was in the apartment, Raquel and Defendant's testimony provided such evidence establishing that Defendant was aware of Child's presence in Victim's apartment at the time. Thus, by shooting towards and into the apartment in which Defendant was aware Child was present, there was sufficient evidence that he created a risk to Child that was foreseeable. *See id.*

**{9}** Finally, Defendant contends that Child's general proximity to gunfire does not establish that Child was subjected to a "substantial and foreseeable risk" since the apartment walls shielded Child. However, it is undisputed that at least one bullet penetrated the exterior wall and entered the apartment where Child was located. Moreover, by engaging in a gunfight in the alley immediately behind the apartment and firing several rounds towards the apartment, one of which entered into the apartment, when Defendant was aware of Child's presence therein, a rational juror could readily draw an inference that Defendant placed Child in harm's way, creating a substantial risk to Child's health and safety without justification. *See, e.g.*, *id.* ¶ 17. Concluding there is sufficient evidence to support the child abuse conviction, we affirm.[2]

## II.    Double Jeopardy

**{10}** Next, Defendant argues that his convictions for aggravated battery on a household member and aggravated assault on a household member violate double jeopardy based on double description because Defendant's conduct was unitary. The State contends that Defendant's conduct was not unitary, and that, even if it were, the Legislature intended separate punishments. We agree with the State that Defendant's conduct was not unitary such that his convictions do not violate double jeopardy.

**{11}** "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M.

---

[2]Because we conclude that there is sufficient evidence supporting Defendant's child abuse conviction, we need not address Defendant's alternative abettor contention. *See State v. Salazar*, 1997-NMSC-044, ¶ 32, 123 N.M. 778, 945 P.2d 996 (stating that "a jury's general verdict will not be disturbed in such a case where substantial evidence exists in the record supporting at least one of the theories of the crime presented to the jury"); *State v. Godoy*, 2012-NMCA-084, ¶ 6, 284 P.3d 410 ("[W]here alternative theories of guilt are put forth under a single charge, jury unanimity is required only as to the verdict, not to any particular theory of guilt.").

211, 131 P.3d 61 (internal quotation marks and citation omitted). "The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963). Claimed violations of the protection against double jeopardy are questions of law, which require de novo review. *State v. Contreras*, 2007-NMCA-045, ¶ 18, 141 N.M. 434, 156 P.3d 725.

**{12}** In double description double jeopardy cases, the defendant is convicted under multiple statutes for the same conduct. *State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Such is the case here. We therefore apply the two-step test articulated in *Swafford v. State*, 1991-NMSC-043, 112 N.M. 3, 810 P.2d 1223, and first ask "whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. If it is not, the protection against double jeopardy has not been violated and we proceed no further. *Id.* If it is, we proceed to ask "whether the [L]egislature intended to create separately punishable offenses." *State v. Baroz*, 2017-NMSC-030, ¶ 22, 404 P.3d 769. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment[s] in the same trial." *Swafford*, 1991-NMSC-043, ¶ 25.

**{13}** Our inquiry for unitary conduct turns on sufficient indicia of distinctness between the acts at issue. *Id.* ¶ 26; *see State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. To determine whether a defendant's acts are sufficiently distinct, we consider the *Herron* factors: (1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims. *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624. Conduct is not unitary when space and time separate the events, or "the quality and nature of the acts or the objects and results involved are distinguishable." *State v. Contreras*, 1995-NMSC-056, ¶ 14, 120 N.M. 486, 903 P.2d 228 (omission, internal quotation marks, and citation omitted). However, while time and space may distinguish acts in some cases, this is not true in every case, and courts should consider each of the *Herron* factors. *See State v. Phillips*, 2024-NMSC-009, ¶ 13, 548 P.3d 51. In conducting our analysis, we may consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* "We also consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Schackow*, 2006-NMCA-123, ¶ 18, 140 N.M. 506, 143 P.3d 745 (internal quotation marks and citation omitted).

**{14}** The district court instructed the jury that to convict Defendant of aggravated battery with a deadly weapon, it must find, in relevant part, that

> 1. [D]efendant touched or applied force to Raquel . . . by striking her in the head with a firearm, a deadly weapon[;]
>
> 2. [D]efendant intended to injure Raquel[; and]

3.      Raquel . . . was a household member of [D]efendant[.]

*See* § 30-3-16(A), (C)(2); UJI 14-322 NMRA. Additionally, the district court instructed the jury that to convict Defendant of aggravated assault with a deadly weapon, it must find, in relevant part, that

1.      [D]efendant pointed a firearm a[t] Raquel . . .;

2.      [D]efendant's conduct caused Raquel . . . to believe that [D]efendant was about to intrude on Raquel['s] bodily integrity or personal safety by touching or applying force to Raquel . . . in a rude, insolent, or angry manner; and

3.      A reasonable person in the same circumstances as Raquel . . . would have had the same belief[.]

*See* § 30-3-13(A)(1); UJI 14-305 NMRA. We now turn to the State's theory of the case to determine whether the jury reasonably could have inferred independent factual bases for the aggravated assault and the aggravated battery convictions, such that Defendant's conduct was not unitary.

**{15}**    The State advanced a theory that Defendant pointing a gun at Raquel was the assaultive force while striking her in the head with a firearm was the battery force. While we acknowledge that Defendant's actions all occurred within a short period of time and in the same location—the alleyway behind Victim's apartment, these factors alone are not dispositive of whether Defendant's conduct was unitary. *See Herron*, 1991-NMSC-012, ¶ 15; *Phillips*, 2024-NMSC-009, ¶ 13. Describing the distinctness of the relevant acts here, the State explained during closing arguments that Defendant's assaultive conduct was pointing a gun at Raquel as he ran up to her, which caused her to "be fearful that she might get shot." This was supported by Raquel's testimony that Defendant and his brother ran at her while pointing their guns and yelling for her to get on the ground. As to the aggravated battery, the State explicitly told the jury during closing arguments that "Defendant used his gun and hit [Raquel] over the head with it. That's intending to injure [her]." The State presented evidence that Defendant did in fact injure Raquel by hitting her in the head with his gun causing blood to trickle down Raquel's face. Thus, under the theory of this case as argued by the State, different underlying conduct and evidence supported the State's theory and Defendant's conviction under each statute. In other words, the actions relied on to effectuate aggravated assault of a household member with a deadly weapon, as charged in this case, required different conduct and evidence than the actions necessary to effectuate the aggravated battery of a household member with a deadly weapon. Thus, Defendant's conduct was separated by sufficient indicia of distinctness such that the aggravated assault was complete before the aggravated battery occurred. Therefore, we conclude that Defendant's conduct was not unitary and the convictions do not violate double jeopardy.

### III.    Ineffective Assistance of Counsel

**{16}**    Finally, Defendant raises an ineffective assistance of counsel challenge, but concedes this issue may be best addressed through a writ of habeas corpus proceeding. We agree with Defendant that this claim should be brought through a writ of habeas corpus proceeding. We explain.

**{17}**    Criminal defendants possess a constitutional right to "reasonably effective assistance of counsel." *State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. When an ineffective assistance of counsel claim is raised for the first time on direct appeal, this court

> evaluate[s] the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance. The burden of establishing a prima facie case requires [the d]efendant to establish both elements of ineffective assistance, attorney error and prejudice.

*State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 (internal quotation marks and citations omitted). More precisely, "[a] defendant makes a prima facie case of ineffective assistance of counsel by showing (1) that defense counsel's performance fell below the standard of a reasonably competent attorney, and (2) that due to the deficient performance, the defense was prejudiced." *State v. Howl*, 2016-NMCA-084, ¶ 10, 381 P.3d 684 (internal quotation marks and citation omitted).

**{18}**    On appeal, Defendant argues he received ineffective assistance of counsel because "[Defendant]'s counsel did not call [Defendant]'s co[]defendant, [his brother], as a witness" and "[c]ounsel was also deficient in not having independent testing done on a number of items of evidence and not calling independent experts." However, Defendant fails to point to any facts in the record or further develop his argument, conceding that "the record does not contain any information regarding why defense [c]ounsel did not do any of these things." Thus, Defendant has failed to establish a prima facie case of ineffective assistance of counsel. When the record is insufficient to establish a prima facie case of ineffective assistance of counsel, our appellate courts prefer that a defendant bring their claims in a writ of habeas corpus proceeding. *See Bernal*, 2006-NMSC-050, ¶ 33; *State v. Barela*, 2018-NMCA-067, ¶ 17, 429 P.3d 961. Concluding that Defendant has failed to establish a prima facie case for ineffective assistance of counsel, we decline to address this issue further.

### CONCLUSION

**{19}**    For the foregoing reasons, we affirm Defendant's convictions.

**{20}** IT IS SO ORDERED.

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**GERALD E. BACA, Judge**