This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37454**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER BURNS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
John C. Bennett, Assistant Appellate Defender
Aja Oishi, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Christopher Burns, convicted of two counts of trafficking controlled substances by distribution, contrary to NMSA 1978, Section 30-31-20 (2006), appeals the district court's denial of his motion to continue his trial. Defendant challenges the denial as a per se violation of his right to effective assistance of counsel and also as an abuse of discretion. We affirm.

**BACKGROUND**

**{2}** The Public Defender Department was appointed to represent Defendant about a week after the State filed a criminal complaint against him in magistrate court. The complaint alleged that Cory Crayton, a New Mexico State Police (NMSP) undercover agent, twice bought methamphetamine from Defendant.

**{3}** David Proper entered his appearance as counsel for Defendant shortly after that, on August 3, 2017. Defendant waived his right to a preliminary hearing and the State filed a criminal information in the district court on August 9, 2017. Defendant's case was assigned to Judge Shuler Gray. On September 25, 2017, Proper represented Defendant at his arraignment, and the district court set trial for February 5, 2018, on a trailing docket.

**{4}** Before the scheduled trial date, Judge Shuler Gray and another district court judge sent a letter to Proper and two other public defenders, one of whom—Deidre Ewing—was the attorney who would later represent Defendant at trial. The letter did not concern Defendant's case specifically, but rather Proper and his appearance in their courtrooms. The judges, noting their obligations to avoid calling in jurors unnecessarily and to avoid wasting public resources, prohibited Proper from appearing in their courtrooms "for anything other than arraignments, changes of plea, or routine motions," or as first chair in any trial. The judges apparently took this step after Proper had too often called in sick on the morning of trial. The judges then ordered that each of Proper's cases pending in their courtrooms be immediately reassigned to another attorney.

**{5}** Presumably in response to the letter, Deputy Chief Public Defender Chandler Blair entered his appearance as "Associate Counsel with David Proper" for Defendant on January 31, 2018. Two days later, on February 2, 2018, the district court reset trial, evidently at both parties' request,[1] for March 20, 2018, on a trailing docket.

**{6}** The defense then made several attempts to continue the new trial setting. On February 8, 2018, Blair filed a motion for a continuance, which the State opposed. Its grounds were that Blair "just filed an entry of appearance" and that co-counsel would be unavailable on March 20, 2018, due to a scheduling conflict. The defense filed an identical motion on February 23, 2018. Proper filed a request for a motion hearing on February 27 and filed a newly worded continuance motion on March 16. This time, the motion stated that "[d]efense counsel has almost completed his investigation and is in need of a photograph of NMSP Officer . . . Crayton to verify important information vital to Defendant's defense" and that "[d]efense counselors seeks (sic) to continue the March 20, 2018 jury trial so they may complete their investigation." The district court granted the continuance and reset trial for May 8, 2018. According to statements later made by Judge Shuler Gray, she warned the parties when granting this second

---

1No party formally requested this continuance. The evidence that it was continued at both parties' request is inferred from statements made by Judge Shuler Gray at the May 24, 2018 hearing.

continuance that she would not grant another.[2] The setting was apparently changed to the week of Monday, May 21, 2018, on a trailing docket, and later a firm trial date was established as that Friday, May 25, 2018.

**{7}** On Wednesday of that week, Blair filed another motion to continue the trial, signed by Ewing; it cited as grounds that "counsel is currently in trial in another county" and "counsel needs additional time to conduct further witness interviews." The following day, Thursday, Ewing appeared in district court to address Defendant's case and two other cases that Proper was "handling." The district court insisted that one of the cases—all of which had the same State witnesses and apparently no defense witnesses—go to trial the next day. Ewing resisted the idea, saying that (1) Blair was in another trial, which began the day before and would continue into Friday; (2) Proper was on FMLA leave and would be unavailable on Friday; (3) as Proper had left them, two of the three case files Blair found on Monday were "not in the shape . . . they should be in to be tried" and (4) due to Ewing's unfamiliarity with the cases, Ewing believed she would provide ineffective assistance were she to try any of the cases on Friday. Ewing added that Blair worked on the files on Monday and Tuesday of that week. The district court, denying the motion to continue, told Ewing she would serve as trial counsel on the case of her choosing.

**{8}** Ewing represented Defendant at his trial that Friday, and he was found guilty on both charges. Additional facts are introduced in our discussion of the issues.

## DISCUSSION

**{9}** Defendant first argues that the circumstances surrounding the district court's denial of his motion for a trial continuance resulted in a per se violation of his right to effective assistance of counsel. He then argues in the alternative that the district court abused its discretion by denying the motion.

**I. The Circumstances Surrounding Defendant's Trial Representation Do Not Create a Presumption of Ineffective Assistance of Counsel**

**{10}** Citing *United States v. Cronic*, 466 U.S. 648 (1984), Defendant asserts that the circumstances leading up to his trial made it so unlikely that any lawyer could provide effective assistance, that ineffectiveness should be presumed without inquiry into the trial itself. Defendant points out that, in the face of his exposure to punishment for serious charges, Ewing was ordered to take his case to trial "without time to prepare" and in spite of her insistence that she would be ineffective.

**{11}** Defendant seeks relief under the Sixth Amendment of the United States Constitution, which affords the accused in a criminal prosecution "the [a]ssistance of [c]ounsel for his defen[s]e." Accordingly, our review of this issue is de novo. *See State v. Montoya*, 2015-NMSC-010, ¶ 57, 345 P.3d 1056 ("Claims of ineffective assistance of

---

2There is no primary evidence of this warning, as no recording of the exchange appears in the record, but Defendant does not dispute that the warning was given.

counsel are reviewed de novo."). This Sixth Amendment right is, more precisely, the right to effective assistance of counsel, *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), during all "critical stages of the proceedings[,]" *United States v. Wade*, 388 U.S. 218, 224 (1967). One such stage is from the time of arraignment to trial. *Powell v. Alabama*, 287 U.S. 45, 57 (1932).

{12}    The purpose of the right to effective assistance of counsel is "to assure fairness in the adversary criminal process." *Cronic*, 466 U.S. at 656 (internal quotation marks and citation omitted). This right, then, is characterized as "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Id.* Thus, "[w]hen a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred." *Id.* It follows that, "[a]bsent some effect of [the] challenged [attorney] conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* at 658. In other words, a defendant must suffer some prejudice associated with ineffective representation to warrant relief under the Sixth Amendment. *See State v. Trammel*, 2016-NMSC-030, ¶ 23, 387 P.3d 220 (noting that, on a valid ineffective assistance of counsel claim, "a defendant must show that there is a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different" (alteration, internal quotation marks, and citation omitted)).

{13}    The exceptions to this general rule—that there be a showing of prejudice resulting from counsel's deficient performance—are embodied in a "very limited class of cases[,]" ones featuring "exceptional circumstances." *State v. Brazeal*, 1990-NMCA-010, ¶¶ 18-19, 109 N.M. 752, 790 P.2d 1033. These are cases in which: (1) there is "the complete denial of counsel"; (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) "counsel is available to assist the accused during trial," but "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is sufficiently small. *Cronic*, 466 U.S. at 659-60. Defendant sees his circumstance as falling into this third category.

{14}    Defendant compares his case to *Powell*, a case in which seven young men were convicted of rape and sentenced to death. 287 U.S. at 49-50. Before the morning of their back-to-back trials, the "young, ignorant, illiterate" defendants, who were "surrounded by hostile sentiment" due to the nature and publicity of the crime, had legal representation in only a very limited sense: "all the members of the bar" had been appointed to represent them at their arraignment. *Id.* at 56-58. On the morning of trial only days later, in an effort to secure more definite representation at trial, the trial judge appointed an interested lawyer visiting from another state to serve as trial counsel. *Id.* at 53-54. The lawyer expressed doubt about his potential effectiveness, so the court enlisted a member of the bar to assist him. *Id.* at 55-56. The visiting lawyer went along with the proposal, despite there having been no defense investigation into the case. *Id.* at 58. The defendants "were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them." *Id.* These circumstances gave rise to a presumption of inherent unfairness and

ineffective assistance because the defendants "were not accorded the right of counsel in any substantial sense." *Id.*

**{15}** Defendant likens his circumstances to those in *Powell* by highlighting: (1) Ewing's belief that she would give ineffective assistance; (2) the seriousness of his charges as demonstrated by the potential sentence he faced; and (3) Ewing's limited opportunity to prepare for trial. These comparisons fall flat for several reasons. First, the matter of an attorney's subjective doubt about his or her ability to be effective, in and of itself, carries little, if any, weight in the analysis. *See State v. Hernandez*, 1993-NMSC-007, ¶¶ 24-25, 115 N.M. 6, 846 P.2d 312 (declining to presume ineffective assistance based on counsel's insufficient time to prepare, where counsel had almost a year, but was inexperienced and claimed more time was needed); *Brazeal*, 1990-NMCA-010, ¶¶ 12, 20 (implicitly overlooking trial counsel's expression of unpreparedness for trial as a factor in concluding that the circumstances did not warrant a presumption of prejudice).

**{16}** This case is otherwise easily distinguished from *Powell* as well, in that the respective opportunities to prepare a defense differ markedly. Here, Defendant was represented by the same public defender beginning before his arraignment and during the nearly ten months before his trial, and for nearly four months leading up to trial, also represented by a second public defender. The *Powell* defendants, on the other hand, "did not have the aid of counsel in any real sense" during what the court described as the "perhaps . . . most critical period of the proceedings"—that in which counsel could carry out the "vitally important" pretrial actions of consultation, investigation, and preparation. 287 U.S. at 57.

**{17}** Defendant overlooks this key contrast in advancing an argument that presumes that trial counsel needs to be the same individual who undertook the pretrial consultation and investigation. His argument, moreover, presumes that around twenty-four hours is necessarily too little time for any new-to-the-case attorney[3] to prepare for a criminal trial.[4] But the law does not support these presumptions. *See Morris v. Slappy*, 461 U.S. 1, 5, 11-12 (1983) (rejecting the argument that the right to effective assistance of counsel was infringed where trial counsel took over for the attorney who conducted the consultation and investigation); *Chambers v. Maroney*, 399 U.S. 42, 53-54 (1970) (upholding the constitutionality of a denial for a continuance where substitute counsel first conferred with the defendant only minutes before trial). As the United States Supreme Court has remarked, "[n]ot every restriction on counsel's time or opportunity to

---

3Defendant represents that Ewing "had no previous contact with [this] case[,]" but her signatures on at least five filed pleadings suggests otherwise.

4We refer to only one trial here and elsewhere in this opinion despite Defendant's claim that Ewing was ordered to prepare for three trials in the time frame at issue. The claim stems from an inference drawn from the district court's statement at the Thursday hearing that "if we get a change of plea on one [of the three cases], then we'll try the next one of the two following." The State disputes the claim, saying that Ewing could have communicated with any of the cases' defendants to rule out the possibility of intent to enter a plea agreement, thereby making preparation for only one trial necessary. Defendant does not respond to this refutation in his reply brief. Nor does he assert that Ewing did in fact prepare for any trial but his. Considering these points, we decline to validate Defendant's claim. Consequently, Defendant's conflict-of-interest argument, which proceeds from this claim, necessarily fails.

investigate or to consult with his client or otherwise to prepare for trial violates a defendant's . . . right to counsel." *Morris*, 461 U.S. at 11. In fact, the Court has explicitly declined to "fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel[.]" *Chambers*, 399 U.S. at 54.

**{18}** We pause to note that, in this first half of his appeal, Defendant relies exclusively on the argument that his circumstances were enough like those in *Powell* to raise a presumption of ineffectiveness of counsel. But Defendant overlooks the guidance our Supreme Court gave in *Hernandez*, 1993-NMSC-007, ¶ 19, and cited with approval in *State v. Salazar*, 2007-NMSC-004, ¶ 13, 141 N.M. 148, 152 P.3d 135, for determining whether the denial of a continuance raises that presumption. *Hernandez* lists factors for making that determination, including "the amount of time available to prepare a defense, the complexity of the issues involved in the case, the experience of trial counsel, and the reasons proffered by trial counsel for requesting a continuance." 1993-NMSC-007, ¶ 19. While we can glean from the record some evidence relevant to these considerations, it is not enough to undertake a proper analysis, and Defendant's failure to argue each point compounds the problem. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that an "appellate court does not review unclear or undeveloped arguments").

**{19}** Suffice it to say that, without knowing more about the specific circumstances of the trial itself or the nature of the investigation undertaken by Defendant's attorneys leading up to it, we cannot reach a conclusion that Defendant was prejudiced without having to inquire into the actual conduct of the trial. *See Cronic*, 466 U.S. at 659-60. In other words, we cannot say that the likelihood that a fully competent lawyer in Ewing's circumstance could have provided effective assistance at Defendant's trial was "so small that a presumption of prejudice is appropriate[.]" *See id.* at 660. Accordingly, based on the record in this case and on the argument Defendant makes, we have no basis to recognize a per se violation of Defendant's constitutional right to effective assistance of counsel.

## II. The District Court Did Not Abuse Its Discretion by Denying Defendant's Motion for a Continuance

**{20}** Defendant argues in the alternative that the district court abused its discretion by denying his motion for a continuance, in that the ruling effected a denial of his due process right to "a reasonable amount of time to prepare a defense." Though Defendant styles his injury in terms of due process, it can also be seen as an alleged violation of the right to effective assistance of counsel. *See Brazeal*, 1990-NMCA-010, ¶ 13 (recognizing the overlap among claims of ineffective assistance of counsel, denial of due process, and denial of a fair trial where they all derive from the denial of a trial continuance). Therefore, useful to our analysis of this issue are cases where it is alleged that the trial court's denial of a continuance cut short the time to prepare for trial, which in turn led to ineffective assistance of counsel.

**{21}** "The grant or denial of a continuance is within the sound discretion of the trial court[.]" *Salazar*, 2007-NMSC-004, ¶ 10. An abuse of that discretion occurs when the ruling is "clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{22}** "When reviewing the denial of a motion for continuance, courts consider several factors[.]" *State v. Gonzales*, 2017-NMCA-080, ¶ 33, 406 P.3d 534; *see id.* (listing factors first enumerated in *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20). They are:

> (1) the length of the requested delay; (2) the likelihood that a delay would accomplish the movant's objectives; (3) the existence of previous continuances in the same matter; (4) the degree of inconvenience to the parties and the court; (5) the legitimacy of the motives in requesting the delay; (6) the fault of the movant in causing a need for the delay; and (7) the prejudice to the movant in denying the motion.

*Gonzales*, 2017-NMCA-080, ¶ 33 (internal quotation marks and citation omitted). To succeed on appeal, a defendant challenging the denial must show: (1) an abuse of discretion under the *Torres* factors; and (2) prejudice resulting from the denial. *See Salazar*, 2007-NMSC-004, ¶ 16; *Gonzales*, 2017-NMCA-080, ¶ 32 (noting that the defendant carries the burden to show abuse of discretion and ensuing injury).

**A.    Abuse of Discretion Premised on the District Court's Alleged Failure to Cite the *Torres* Factors**

**{23}** Defendant first contends that the district court, when ruling on the motion, "should have been aware" of the *Torres* factors but failed to consider them. This argument is flawed. The record suggests that, while the district court did not address *Torres* in form, it did so in substance, at least concerning the third through seventh factors. Second, insofar as there was any error of omission, Defendant appears to have contributed to the error: he neglected in his written motion and also at the Thursday hearing to cite *Torres* and set out facts relevant to each factor. This oversight occurred despite Defendant bearing at least some responsibility for alerting the district court to the *Torres* factors. *See Salazar*, 2007-NMSC-004, ¶ 15 (remarking that a "significant part" of the *Torres* framework is "the specific facts presented to the trial court in support of . . . the motion"). To whatever extent that Defendant's allegation of error is valid, the error cannot be attributed to the district court alone and so cannot prevail. *See Cordova v. Taos Ski Valley, Inc.*, 1996-NMCA-009, ¶ 13, 121 N.M. 258, 910 P.2d 334 ("A party who has contributed, at least in part, to perceived shortcomings in a trial court's ruling should hardly be heard to complain about those shortcomings on appeal.").

**B.    Abuse of Discretion Premised on Application of the *Torres* Factors**

**{24}** Defendant next argues that applying the *Torres* factors to the circumstances of his case demonstrates that denying his motion was an abuse of discretion. At the time the district court ruled on the motion, those circumstances were represented by Defendant essentially as follows. Blair, who was presumably planning to serve as lead trial counsel, was scheduled for another trial on Friday, and Ewing, if made to step in for him, believed she would give ineffective assistance due to her unfamiliarity with the case. Furthermore, as of Monday, the file was "not in shape," and as of Wednesday, the defense needed to conduct additional witness interviews.

**{25}** This challenge on the merits likewise fails, as we cannot characterize the district court's denial of an additional continuance as clearly untenable or not justified by reason. The heart of this conclusion lies in consideration of the sixth factor: the fault of the movant in causing the delay. Before elaborating on that point, we first consider the first through fifth factors, and then afterward, the seventh.

### 1. First and Fifth Factors

**{26}** Defendant did not indicate the length of his requested continuance, so the first factor is inapplicable. The fifth factor is similarly non-determinative: there was no evidence that the motives underpinning Defendant's request were improper.

### 2. Second Factor

**{27}** The application of the second factor—"the likelihood that a delay would accomplish the movant's objectives"—is less favorable to Defendant than he would have us believe. He argues that, had the continuance been granted, "it is likely that Ms. Ewing's objectives could have been met" because she would have used the time to take several enumerated pretrial actions, such as personally interviewing witnesses and reviewing raw data. This argument presumes that Ewing could not perform effectively at trial without independently investigating the case. As discussed in the first section of this opinion, however, courts generally do not presume that trial counsel cannot pick up where pretrial counsel left off—even when the substitution comes with relatively little notice.

**{28}** Another problem with this argument is that it was not made to the district court. Ewing did not specify what pretrial actions remained unfinished.[5] *Cf. State v. Aragon*, 2009-NMCA-102, ¶ 36, 147 N.M. 26, 216 P.3d 276 (suggesting that stating with particularity the steps still required to prepare for trial helps establish whether a continuance is warranted). Only on appeal does Defendant attempt to bring some of this information to light. But our review of the district court's denial of Defendant's motion is logically confined to "the facts known to the court at [the] time [of its ruling]." *State v. Perez*, 1980-NMSC-143, ¶ 5, 95 N.M. 262, 620 P.2d 1287; *id.* (noting that "the trial court did not possess the luxury of hindsight" when it made its ruling). Moreover, Defendant did not highlight then, nor does he highlight now, information on the essential inquiry:

---

5Moreover, the district court had reason to believe there was little left to do. In March, Proper represented that the defense had "almost completed [its] investigation."

what, if anything, was both (1) left to do before the State's case could be subject to a "meaningful adversarial testing[,]" *Cronic*, 466 U.S. at 656; and (2) impractical to accomplish before the next day.

**{29}** In any case, Defendant's primary stated need for more time was to "conduct further witness interviews."[6] It is not certain that a continuance would have accomplished this. The defense had many months to conduct all the interviews it wished to, yet presumably failed—even with two continuances and the district court's warning that there would be no third. The pattern suggests that there was at least some chance that defense counsel's failure in this regard would persist throughout an additional delay, were one granted.

### 3. Third and Fourth Factors

**{30}** The third and fourth factors—the number of prior continuances, and the degree to which the parties and the district court would be inconvenienced by further delay—weigh against Defendant. As noted, the district court had already granted two continuances. Though a third apparently would not have inconvenienced the State, it would have further inconvenienced the district court. " 'Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.' " *Brazeal*, 1990-NMCA-010, ¶ 16 (quoting *Morris*, 461 U.S. at 11). "As a result, 'only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.' " *Id.* (quoting *Morris*, 461 U.S. at 11-12). Here, the district court's insistence that one of the three cases go to trial the next day was not arbitrary—it was apparently in response to legitimate concerns about responsibly using public resources and respecting the time of the jurors and witnesses scheduled to appear.

### 4. Sixth Factor

**{31}** The sixth factor, fault of the movant in creating the need for delay, weighs heavily against Defendant. Defendant fails to recognize this, instead drawing attention to his own and Ewing's roles in the situation and stressing their blamelessness. Even if we were to agree with that assessment, the actions of Defendant and Ewing are not the primary concern. As the district court recognized, others acting on Defendant's behalf created the need for further delay—namely, Proper and Blair.

**{32}** As noted, plenty of time to conduct witness interviews had already been given. The State filed its witness list on September 7, 2017. The list named four witnesses. On January 9, 2018, the State named a fifth witness. The State's five-named witnesses

---

6His other reason for wanting a continuance was to resolve Blair's scheduling conflict. But even had that issue been resolved—by, for example, resetting trial for the following Monday—it appears that the need to conduct interviews would remain, which is why we characterize it here as the primary basis upon which further delay was sought.

were thus known to Proper almost five months before the first trial setting, about six and a half months before the second, and nearly nine months before the third. Blair, who entered his appearance on January 31, 2018, likewise had time to interview the State's witnesses: about a month before the first trial setting, six weeks before the second, and almost four months before the third. Furthermore, the defense had almost ten months to conduct interviews of its own witnesses.[7] It should go without saying that any failure to interview witnesses was entirely attributable to Defendant. *See Aragon*, 2009-NMCA-102, ¶ 40 (concluding that the defendant was responsible for the need for a continuance where counsel had "over eight months to interview one witness and two and a half months to interview the remaining witnesses," but failed).

**{33}** Fault can also be attributed to Defendant insofar as the delay was needed to avoid having trial on a day Blair was unavailable. On April 16, the district court confirmed—in Blair's presence—that trial was set for the week of Monday, May 21 on a trailing docket. Sometime later, it was firmly set for Friday, May 25. According to Ewing, Blair's other trial took place on the Wednesday, Thursday, and Friday of that week. The potential for conflict thus should have been clear to Blair no later than on April 16 or the date the other trial was set, whichever was later. Beginning then, or at least when the conflict actually arose, Blair had options for resolving the issue: he could enlist another attorney, such as Ewing, to serve as trial counsel in his place, or he could bank on the district court reversing itself regarding a third continuance. Consciously or by default, he chose the latter option and exercised it by filing the continuance motion about forty-one hours before Defendant's trial was scheduled to begin. At the motion hearing, the district court expressed its displeasure with the situation, and we similarly attribute fault for creating it to Defendant. *See State v. Salazar*, 2006-NMCA-066, ¶ 21, 139 N.M. 603, 136 P.3d 1013 ("[A] motion for continuance filed at the last minute is not favored.").

### 5.    Seventh Factor

**{34}** In light of all these considerations, perhaps the only *Torres* factor that could overcome the fault attributable to Defendant in causing the need for a continuance is the seventh: "prejudice to the movant in denying the motion." 1999-NMSC-010, ¶ 10. But even that is not sufficiently compelling to make the denial clearly untenable or not justified by reason.

**{35}** Defendant argues that the denial "deprived [him] of all potential avenues of defense" because "Ewing was forced to trial without full discovery, without pretrial interviews, without time to do independent investigation, without access to raw data on which the State's expert relied, and without the opportunity to interview witnesses[.]" Defendant goes on: "[At trial,] Ewing could only chip away at the credibility of the witnesses based on their immediate presentation at court, but she could present no contrary evidence or more thoroughly challenge their credibility through effective impeachment."

---

[7]Ewing and counsel for the State represented at the motion hearing that they were not aware of any defense witnesses, but the record shows that Proper filed a notice of defense witnesses on May 16 and planned to interview them on May 21 and 25, 2018. However, no defense witness testified at trial.

**{36}** These claims falter for at least two reasons. First, Defendant fails to articulate a likely defense that was foreclosed by virtue of the district court's ruling. In cases like this where our courts have recognized prejudice, the defendants made out viable claims tending to disprove guilt. *See, e.g.*, *id.* ¶¶ 12-13 (citing the particular exculpatory testimony that a missing witness—described by the defendant as "the whole show for the [d]efense"—would have given); *State v. March*, 1987-NMSC-020, ¶¶ 2, 9, 105 N.M. 453, 734 P.2d 231 (identifying evidence that, if pursued, could establish that the defendant lacked the capacity to form specific intent). Defendant's generalized and speculative argument that his counsel might happen upon a defense if given more time stands in contrast to the cases cited above.

**{37}** Secondly, Defendant's claims incorporate information not presented to the district court when it denied the continuance. The district court had not been made aware of what pretrial actions were left to do, except that, as of Wednesday of the week of trial, the defense still needed to conduct "further witness interviews." Aside from that, all the district court heard regarding investigation into the case was that, as of Monday, the files were not "in shape." The claims Defendant now raises go outside the arguments made to the district court, and so cannot be taken into account, given that our task is to review the district court's ruling.

**{38}** We consider, rather, what the district court did hear in terms of potential prejudice—the assertions just reiterated and also Ewing's prediction of ineffectiveness. As general propositions, neither circumstance necessarily made prejudice inevitable, or even likely to occur, were the case to go to trial as scheduled. *Cf. Salazar*, 2006-NMCA-066, ¶ 19 (discounting the assertion that prejudice would result if an expert evaluation were not pursued as "speculative"). The district court had no insight into which witnesses had yet to be interviewed and what role they played in establishing evidence of guilt. The district court also might reasonably have assumed that Blair was able to conduct some key pretrial investigation during the week of trial when he worked on the files. Concerning ineffectiveness, Ewing told the district court she would prepare for trial, and she was able to choose the easiest of the three cases to prepare for; it cannot have been said that providing effective assistance was necessarily an impossible feat. Given the defense's glaring role in causing the need for a delay, Defendant's vague representation of potential prejudice was insufficient to make denying the continuance unreasonable. *See Aragon*, 2009-NMCA-102, ¶ 41.

## C.    Conclusion Under the *Torres* Factors

**{39}** All considered, the district court had reason to deny the continuance. Defense counsel had clearly displayed a lack of diligence in preparing for trial and had taken an unsound risk in trying to buy more time to remedy the fault. That put the district court in a difficult position. Either it forced the case to trial, or it retreated from its "no continuance" stance, compromised its credibility and control over its docket, and tolerated the waste of resources. The district court's decision to go forward with trial as scheduled after having already granted two continuances was justified, particularly given the absence of concrete evidence that doing so would interfere with due process

or the right to effective assistance of counsel. *See Perez*, 1980-NMSC-143, ¶ 4 (upholding the denial of a trial continuance where the defense exhibited a lack of diligence in securing a witness); *Salazar*, 2006-NMCA-066, ¶ 26 (upholding the denial of a trial continuance where defense counsel showed a lack of diligence in preparing for trial). Accordingly, the denial of Defendant's motion for a continuance was not an abuse of discretion.

**CONCLUSION**

**{40}** We affirm.

**{41} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**