This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40111

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VINCENTE C. GARCIA a/k/a**
**VINCENTE GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Following a jury trial, Defendant was convicted on twelve counts: five counts of criminal sexual penetration of a minor (CSPM) in the second degree (child age thirteen to eighteen), contrary to NMSA 1978, Section 30-9-11(E)(1) (2009); three counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13 (2003); one count each of possession, distribution, and manufacture of child pornography, contrary to NMSA 1978, Section 30-6A-3(A), (C), (E) (2016); and one

count of aggravated battery (great bodily harm), contrary to NMSA 1978, Section 30-3-5(A), (C) (1969). Defendant argues (1) the two-month charging period violated his right to due process; (2) the district court erred in refusing to exclude late-disclosed evidence; (3) the district court erred in admitting evidence, which he contends the State failed to properly authenticate; (4) there was insufficient evidence to sustain any of his convictions; and (5) certain convictions violate double jeopardy. We affirm

{2}     Because this is a memorandum opinion and the parties are familiar with the facts and procedural background, we reserve discussion of the pertinent facts within the context of Defendant's arguments.

**DISCUSSION**

**I.      The Length of the Charging Period Did Not Violate Defendant's Right to Due Process**

{3}     The State charged Defendant with twelve counts, which the indictment alleged occurred "on or between November l, 2018 and December 31, 2018." On Defendant's motion, the State filed a bill of particulars, which included certain additional details and revised the charging period for two charges, but retained the two-month charging period for the remaining charges. Defendant argues the two-month charging period violated his right to due process. We review whether a charging period violated a defendant's right to due process de novo. *State v. Tafoya*, 2010-NMCA-010, ¶ 7, 147 N.M. 602, 227 P.3d 92.

{4}     At stake is Defendant's due process right to reasonable notice of the charges against him in order to prepare his defense. *See State v. Baldonado*, 1998-NMCA-040, ¶¶ 18, 20, 124 N.M. 745, 955 P.2d 214. To determine whether the length of the charging period violated Defendant's due process right, we analyze the *Baldonado* factors, which "relate to both whether the indictment is reasonably particular and whether the defendant suffered prejudice." *Id.* ¶¶ 27, 29 (providing an illustrative list of factors to consider). "The [*Baldonado*] test reviews the reasonableness of the [s]tate's efforts at narrowing the time of the indictment and measures the potential prejudice to the defendant of the time frame chosen by the [s]tate." *Baldonado*, 1998-NMCA-040, ¶ 26.

{5}     The district court made findings addressing certain *Baldonado* factors. Several findings, which Defendant does not dispute and our review confirms, weigh in favor of a determination that the indictment was "reasonably particular" such that Defendant had reasonable notice of the charges against him in order to prepare his defense. *See id.* As to the "surrounding circumstances," the district court found that Victim (A.M.), had alleged "a continuing course of conduct." *See id.* ¶ 27. The district court also found that Defendant had "frequent, unsupervised access" to A.M., *see id.*, due to Defendant's status "[a]s the boyfriend of [A.M.]'s mother."

**{6}**     Another *Baldonado* factor not specifically addressed in the district court's order also weighs against a due process violation. As to "[t]he length of the alleged period of time in relation to the number of individual criminal acts alleged," *see id.*, the bill of particulars alleged that ten offenses occurred between November 1, 2018 and December 31, 2018. Based on the multiple offenses alleged in a two-month period, we conclude this factor also weighs in the State's favor.

**{7}**     Defendant, however, argues that the charging period violated his right to due process, pointing to A.M.'s age and ability to particularize the date and time of the alleged offense, the extent and thoroughness of the State's efforts to narrow the time frame, and Defendant's inability to prepare an alibi defense. *See id.*

**{8}**     As to the State's efforts, the district court found that "[t]he State re[]reviewed [A.M.]'s forensic interview and discovery in an effort to further narrow the time frame" and stated it was "satisfied the State has been thorough in its efforts to narrow the time frame." Even if, however, we were to conclude that these factors weighed in Defendant's favor, Defendant has not demonstrated that the two-month charging period prejudiced his defense. *See id.* ¶ 29 ("The [*Baldonado*] factors . . . relate to both whether the indictment is reasonably particular and whether the defendant suffered prejudice. If th[is] [C]ourt finds that the charge was not stated with reasonable particularity, it must then look to see if the [d]efendant is prejudiced by that failure."). "Prejudice must be both actual, not based on pure conjecture, and substantial in its impact on the defense." *State v. Ervin*, 2002-NMCA-012, ¶ 17, 131 N.M. 640, 41 P.3d 908. The defendant bears the burden of demonstrating prejudice. *See Tafoya*, 2010-NMCA-010, ¶ 16 (noting that the defendant was unable to adequately demonstrate that he was deprived of the ability to present an alibi defense).

**{9}**     Defendant asserts that he was prejudiced by the two-month charging period because it made it "nearly impossible to adequately investigate possible defenses or assert an alibi defense." Apart from this assertion, however, Defendant does not explain what other defenses he could have pursued had the time frame been narrowed.

**{10}**     As to "[w]hether the defendant c[ould] assert a plausible alibi defense," *see Baldonado*, 1998-NMCA-040, ¶ 27, Defendant's analysis of this factor is undeveloped, stating, "The motion for a [b]ill of [p]articulars asserted that [Defendant] was unable to prepare an alibi defense or formulate a specific defense without a narrower time[ ]frame." Defendant also fails to point to any evidence in the record suggesting that an alibi defense might have been "plausible." *See id.*; *see also Tafoya*, 2010-NMCA-010, ¶¶ 11, 16 (noting that the defendant attempted to prove prejudice to his proposed alibi defense through "evidence of an alibi—such as bank records, cell phone records, employment records, and vacation records"). But even had Defendant alleged evidence suggesting an alibi during portions of the charging period, it is not clear that such evidence would have affected the State's ability to prove its case, given that the district court found the charged conduct was based on a "continuous course of conduct" and that, "as the boyfriend of [A.M.]'s mother, . . . Defendant had frequent, unsupervised access to [A.M.]." *See Tafoya*, 2010-NMCA-010, ¶ 11 (noting that the state's evidence

"about how often [the d]efendant might have had access to [the child] . . . did not lend itself to an alibi defense" and that the defendant's proposed alibi evidence would require a narrow time frame to be effective); *id.* ¶ 16 ("The [s]tate is not required to rely only on evidence that lends itself to an alibi defense." (internal quotation marks and citation omitted)). We conclude that Defendant has failed to demonstrate prejudice that was both "actual . . . and substantial in its impact on the defense." *See Ervin*, 2002-NMCA-012, ¶ 17. Accordingly, we conclude the length of the charging period did not violate Defendant's right to due process.

## II.    The District Court Did Not Err in Refusing to Exclude Late-Disclosed Evidence

**{11}**    Defendant next argues the district court erred in refusing to exclude the State's untimely disclosed text message evidence. "We review a district court's ruling on late discovery for abuse of discretion. In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citations omitted). "In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non[]disclosed evidence was material; (3) whether the non[]disclosure of the evidence prejudiced the defendant; and (4) whether the [district] court cured the failure to timely disclose the evidence." *State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701 (internal quotation marks and citation omitted).

**{12}**    Assuming, as Defendant argues, that the State breached its duty to timely disclose and that the text messages were material, we conclude the district court did not abuse its discretion in admitting this evidence because Defendant failed to demonstrate prejudice and because the district court provided Defendant an additional opportunity to interview A.M.'s mother regarding these text messages.

**{13}**    "[The d]efendant has the burden of showing that he was prejudiced by the untimely disclosure." *Duarte*, 2007-NMCA-012, ¶ 15 (internal quotation marks and citation omitted). Defendant contends that he was prejudiced by the State's failure to comply with the discovery deadline and argues that "[d]efense counsel asserted [below] that the defense was prejudiced by getting the [text] messages late."

**{14}**    Defendant, however, has not adequately explained how earlier disclosure would have improved his defense, or how he would have defended himself differently had there been an earlier disclosure. *See id.* ¶ 19 (noting that the defendant did not argue that "his defense would have been improved or [how] he would have defended differently had there been an earlier disclosure"). Defendant acknowledges that "defense counsel did not explain exactly what he would have done differently had the [text] messages been disclosed earlier."

**{15}**     Additional considerations weigh against a finding of prejudice: Defendant received the late-disclosed text messages sent by Defendant to A.M.'s mother five days before trial, and the district court ordered the State to make A.M.'s mother available for an interview immediately following the hearing on the issue, which the State did four days before trial. *See State v. Vallejos*, 2000-NMCA-075, ¶ 33, 129 N.M. 424, 9 P.3d 668 (noting that the defendant knew approximately five days before trial that the prosecution intended to call a late-disclosed witness and ordered the state to make the witness available, which it did the next morning). Defendant does not indicate why the time provided to interview A.M.'s mother "was insufficient, . . . [or] . . . adequately explain" how defense counsel's "cross-examination of the witnesses could have been improved without the late disclosure." *See id.* ¶ 35. We therefore conclude Defendant has not carried his burden of demonstrating prejudice.

**{16}**     Regarding "whether the [district] court cured the failure to timely disclose the evidence," the district court reprimanded the State and ordered that A.M.'s mother be made available for an interview. *See McDaniel*, 2004-NMCA-022, ¶ 8 (internal quotation marks and citation omitted). Given that the district court found that "the State did not act in bad faith in turning over [the text messages] past the deadline" and that "suppression [was] too severe a sanction given [that] Defendant had a second [pre-trial interview] with [A.M.'s mother]," we cannot say the court erred in issuing this remedy*. See Vallejos*, 2000-NMCA-075, ¶ 34 (stating that "[o]rdering the prosecution to make [the last-disclosed witness] available to the defense several days before the trial was reasonable and well within the [district] court's discretion"). Based on the foregoing, the district court did not err in refusing to exclude the late-disclosed evidence.

### III.     The District Court Did Not Abuse Its Discretion in Admitting the Email and Photograph

**{17}**     Defendant next argues the district court erred in admitting certain evidence because, he contends, the State failed to properly authenticate this evidence. This Court "generally review[s] evidentiary matters for an abuse of discretion." *State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935. "An abuse of discretion occurs when the [evidentiary] ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Sanchez*, 2020-NMSC-017, ¶ 21, 476 P.3d 889 (internal quotation marks and citation omitted). In the authentication context, "there is no abuse of discretion when the evidence is shown by a preponderance of the evidence to be what it purports to be." *State v. Jimenez*, 2017-NMCA-039, ¶ 18, 392 P.3d 668 (internal quotation marks and citation omitted).

**{18}**     Defendant argues that the district court erred by admitting two pieces of evidence based on the State's lack of adequate authentication: (1) an email the State claimed Defendant sent to A.M.'s mother; and (2) a photograph the State claimed Defendant took of A.M.'s genital area (the photograph of A.M.), which was attached to the email.

## A.  The Email

**{19}**   Defendant argues the State failed to properly authenticate the email, contending that testimony from A.M.'s mother, that she received the email from Defendant, lacked sufficient foundation. Under Rule 11-901(A) NMRA, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "[I]n meeting this threshold, the proponent need not demonstrate authorship of the evidence conclusively; arguments contesting authorship go to the weight of the evidence, not its admissibility." *State v. Jesenya O.*, 2022-NMSC-014, ¶ 18, 514 P.3d 445. Evidence may be authenticated "based on distinctive characteristics such as appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* ¶ 23 (alteration, internal quotation marks, and citation omitted). We conclude that the State showed by a preponderance of the evidence that the email was from Defendant.

**{20}**   To begin, the email's sponsoring witness, A.M.'s mother, was clearly one "with knowledge." *See* Rule 11-901(B)(1) (stating that "[t]estimony of a witness with knowledge" may satisfy the authentication requirement). She testified that she had been in a relationship with Defendant for six years and that they had communicated by email throughout their relationship. A.M.'s mother also testified that during their relationship Defendant had always used the same email address: "maSTaeRrrV10plus," which she recognized on the email. She testified that throughout their relationship Defendant had sent her messages from that same email address.

**{21}**   A.M.'s mother also testified that the email's contents contained certain "distinctive characteristics" of Defendant's writing style. *See* Rule 11-901(B)(4); *Jesenya O.*, 2022-NMSC-014, ¶ 23. She testified that, during the entirety of their relationship, Defendant had "a way of writing when he message[d] me." Defendant would use symbols and capital letters in the middle of a word. This style of writing was consistent with the writing in the email. Based on the foregoing, we conclude the email was sufficiently authenticated, and therefore the district court did not abuse its discretion in admitting this evidence.

## B.  The Photograph

**{22}**   Defendant also argues that the State failed to adequately authenticate the photograph of A.M. "Photographic evidence, a form of demonstrative evidence, must fairly and accurately represent the depicted subject in order to satisfy the foundation requirement for authentication of photographs." *State v. Lopez*, 2018-NMCA-002, ¶ 31, 410 P.3d 226 (internal quotation marks and citation omitted). "Photographic evidence is admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation." *Id.* (internal quotation marks and citation omitted).

**{23}**   Here, the photograph's sponsoring witness, A.M., testified based on her personal observations that the photograph fairly and accurately showed at least one of the times

Defendant had taken a picture of her. A.M. testified that during one encounter she heard the sound of a picture being taken on Defendant's phone, and she saw the proffered photograph on her mother's phone after her mother received it. A.M. testified that she had lived with and known Defendant for years, saw his hands "pretty often," and recognized the fingers appearing in the photograph as those of Defendant. A.M. further testified that she recognized her own skin tone, as well as distinctive characteristics of her genitalia in the photograph. Based on the foregoing, we conclude the photograph of A.M. was sufficiently authenticated, and therefore the district court did not abuse its discretion in admitting this evidence.

## IV.   Sufficient Evidence Supports Defendant's Convictions

**{24}**   Defendant next argues there was insufficient evidence to support any of his convictions. When reviewing for substantial evidence, appellate courts "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We consider whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Moreno-Ortiz*, 2022-NMCA-059, ¶ 10, 517 P.3d 959 (internal quotation marks and citation omitted), *cert. denied*, 2022-NMCERT-009 (No. S-1-SC-39499, Sept. 7, 2022). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Id.* (internal quotation marks and citation omitted). We conclude sufficient evidence supports each of Defendant's convictions.

### A.   Defendant's Convictions for Manufacture, Possession, and Distribution of Child Pornography

**{25}**   Defendant first challenges the sufficiency of the evidence for his convictions for manufacture, possession, and distribution of child pornography, which were premised on his manufacture, possession, and distribution of the photograph of A.M. Defendant argues there was insufficient evidence to prove element four of all three charges: Defendant "knew or had reason to know that . . . the participant[] in that act is a child under eighteen years of age." Pointing to "equivocal" evidence, Defendant argues the State did not prove that the photograph showed A.M., and therefore did not prove that the picture showed a child. We are unpersuaded.

**{26}**   In addition to A.M.'s testimony relating to authentication of the photograph, discussed above, A.M.'s mother testified that she received the photograph in an email from Defendant. The email described the accompanying photograph as an image of A.M's genitalia. The jury also heard testimony that A.M. was younger than eighteen on the dates relevant to Defendant's manufacture, possession, and distribution charges, and that Defendant had known A.M. for years and had lived with her. We thus conclude there was sufficient evidence that the photograph showed A.M.'s genital area, and that Defendant had reason to know A.M. was a child at the relevant times. Sufficient evidence supports these convictions.

**B.      Defendant's Convictions for CSPM and CSCM**

**{27}**    Defendant next argues there was insufficient evidence to support his five CSPM convictions and three CSCM convictions. Defendant first contends that the State failed to present certain types of evidence—DNA evidence, a sexual assault nurse examiner (SANE) examination, a lab report, or the actual phone with which mother received Defendant's text messages. Defendant, however, points to no authority that such evidence is necessary for the State to prove its case, and we assume none exists. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (recognizing that "appellate courts will not consider an issue" if no supportive authority is cited, and that, "given no cited authority, we assume no such authority exists" (citation omitted)); *State v. Nichols*, 2006-NMCA-017, ¶ 10, 139 N.M. 72, 128 P.3d 500 ("In prosecutions for criminal sexual penetration, the testimony of the victim need not be corroborated and lack of corroboration has no bearing on weight to be given to the testimony." (alterations, internal quotation marks, and citation omitted)).

**{28}**    Defendant next asserts that the State failed to conduct a complete investigation. He also refers us to portions of A.M.'s testimony stating she could not remember certain details and that she had thrown away her underwear and the blanket on her bed after her encounters with Defendant, which Defendant argues contained potentially exculpatory evidence. Our standard of review, however, requires us to view the evidence in the light most favorable to the prosecution. *See Moreno-Ortiz*, 2022-NMCA-059, ¶ 10. "We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179.

**{29}**    In addition, Defendant does not develop an argument attacking the sufficiency of the evidence for one or more elements of Defendant's CSPM or CSCM convictions, or dispute the State's presentation of evidence in its answer brief citing A.M.'s testimony, the text messages, and Defendant's email as sufficient to support these convictions. Rather, Defendant merely asserts that "[t]he State . . . led [A.M.] through the elements of the crimes, without much detail." We have nevertheless reviewed the evidence and conclude that sufficient evidence supports Defendant's CSPM and CSCM convictions.

**C.      Defendant's Conviction for Aggravated Battery**

**{30}**    Defendant next argues that there was insufficient evidence to support his conviction for aggravated battery, which was based on strangling A.M. Defendant contends there was insufficient evidence to prove element three of the charge: "[D]efendant acted in a way that would likely result in death or great bodily harm to [A.M.]" More specifically, Defendant contends there was insufficient evidence that Defendant's conduct in choking A.M constituted "great bodily harm," which the jury instructions defined as "an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." We conclude there was sufficient evidence for a rational jury to conclude that

Defendant's act in choking A.M. "would likely result in death" or "create[d] a high probability of death."

{31}   A.M. testified that Defendant put his hands around her throat and squeezed while rubbing his penis on her vagina such that she had difficulty breathing and did not know when he would stop. *Cf. State v. Hollowell*, 1969-NMCA-105, ¶ 29, 80 N.M. 756, 461 P.2d 238 (noting that the victim's testimony that, when the defendant choked him, the victim's "breath was practically cut[] off" and the victim realized "it was he or I, one or the other," constituted evidence that the choking created a high probability of death (internal quotation marks omitted)). In addition, the jury heard testimony from an experienced police officer who had worked as an advanced training instructor. The officer testified that, based on his training with use of force techniques, officers are prohibited from touching the neck, which is an "off-limits target" because it can cause someone to "stop breathing or lose consciousness." The instructor further testified that the only situation in which officers are allowed to use force on someone's neck is in a "deadly force situation," due to its effects. Although Defendant argues that the State presented no medical or expert testimony, "the law does not require that 'great bodily harm' be proved exclusively by medical testimony. The jury is entitled to rely upon rational inferences deducible from the evidence." *State v. Bell*, 1977-NMSC-013, ¶ 15, 90 N.M. 134, 560 P.2d 925. "[Viewing] the evidence in the light most favorable to the guilty verdict, [and] indulging all reasonable inferences," *see Montoya*, 2015-NMSC-010, ¶ 52, we conclude a rational jury could have determined that strangling A.M. would likely result in death or created a high probability of death. Accordingly, sufficient evidence supports Defendant's aggravated battery condition.

## V.   Defendant's Manufacturing, Possession, and CSPM Convictions Do Not Violate Double Jeopardy

{32}   Finally, Defendant argues that his manufacturing, possession, and CSPM convictions violate double jeopardy. "A double jeopardy challenge presents a question of constitutional law, which we review de novo." *State v. Torres*, 2018-NMSC-013, ¶ 17, 413 P.3d 467. In evaluating Defendant's double jeopardy claims, "we view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. McClendon*, 2001-NMSC-023, ¶ 3, 130 N.M. 551, 28 P.3d 1092.

{33}   The double jeopardy clause protects against multiple punishments for the same offense. *See Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223; *see also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."). There are two types of multiple punishment cases: double description and unit of prosecution. Double descriptions cases involve a defendant who is "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes," while unit of prosecution cases involve a defendant who is "charged with multiple violations of a single statute based on a single course of conduct." *Swafford*, 1991-NMSC-043, ¶¶ 8-9. Defendant

makes two double jeopardy arguments— one double description and one unit of prosecution. We review each argument in turn.

## A. Defendant's Convictions for Manufacture and Possession of Child Pornography

**{34}** Defendant first argues that his convictions for both manufacturing and possessing child pornography violate double jeopardy, which is a double description argument. *See State v. Gwynne*, 2018-NMCA-033, ¶ 9, 417 P.3d 1157. Thus, we apply the two-part test set forth in *Swafford*, 1991-NMSC-043, ¶ 25, by "first examin[ing] whether the defendant's conduct was unitary, meaning that the same criminal conduct is the basis for both charges." *State v. Contreras*, 2007-NMCA-045, ¶ 20, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). "If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *Id.* (internal quotation marks and citation omitted). "If the conduct is unitary, however, then the second part of the analysis is to determine if the Legislature intended to punish the offenses separately." *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616.

**{35}** Defendant argues the conduct underlying his manufacturing and possession charges was unitary. He contends possession is a continuing offense, that the State cannot break up Defendant's conduct to justify multiple punishments, and that the two convictions were premised on a single piece of evidence—the photograph of A.M. Defendant argues his possession of the photograph was "the consequent result of the manufacture offense." We are unpersuaded.

**{36}** "In analyzing whether a defendant's conduct is unitary, we look to whether the defendant's acts have sufficient indicia of distinctness." *Gwynne*, 2018-NMCA-033, ¶ 12 (alteration, internal quotation marks, and citation omitted). "[W]e consider such factors as proximity in time and space, similarities, the sequencing of the acts, intervening events, and the defendant's goals for and mental state during each act." *State v. Vance*, 2009-NMCA-024, ¶ 13, 145 N.M. 706, 204 P.3d 31. "[T]he question of whether a defendant's conduct is unitary is not limited by the [s]tate's legal theory, but rather depends on the elements of the charged offenses and the facts presented at trial." *Contreras*, 2007-NMCA-045, ¶ 21 (internal quotation marks and citation omitted). "Thus, the proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Gwynne*, 2018-NMCA-033, ¶ 12 (alteration, internal quotation marks, and citation omitted).

**{37}** We conclude that the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for Defendant's manufacturing and possession offenses. Regarding the manufacturing offense, the State had to prove, as relevant to Defendant's double jeopardy argument, that he manufactured a visual medium which depicted a prohibited sexual act between November 1, 2018 and December 31, 2018. The State's legal theory for this charge, which it argued in its closing, was based on Defendant's act of taking the photograph of A.M. sometime

during this time period, thereby producing the image. *See Contreras*, 2007-NMCA-045, ¶¶ 22-23 (examining the state's closing argument to ascertain its legal theory of the charges).

**{38}** As to possession, the State had to prove, in relevant part, that Defendant intentionally possessed a visual medium depicting a prohibited sexual act between November 1, 2018 and May 11, 2019. The State's legal theory for this charge, argued in closing, was focused on Defendant's actions on May 11, 2019, the day Defendant sent the image via email to A.M.'s mother—at least five months after manufacturing it. *See Vance*, 2009-NMCA-024, ¶ 13 (considering "proximity in time" in determining whether a defendant's conduct is unitary). Based on the State's legal theory, and "view[ing] the evidence in the light most favorable to the verdict and resolv[ing] all conflicts and indulg[ing] all inferences in favor of upholding the verdict," *McClendon*, 2001-NMSC-023, ¶ 3, the jury could have reasonably inferred that on May 11, 2019, Defendant intentionally accessed his phone, where he had purposefully retained the photograph for over five months since taking it, intentionally retrieved the picture knowing what it was, and intentionally attached the picture to an email, thereby intentionally possessing the photograph.

**{39}** Given that the State did not limit its legal theory to the facts constituting the manufacturing offense and, to the contrary, provided the jury with a sufficiently distinct factual basis upon which it could base Defendant's conviction for possession, it is unlikely that the jury based its verdict on a theory that Defendant only possessed the photograph of A.M. at the time he manufactured it. *Cf. Contreras*, 2007-NMCA-045, ¶ 23 ("Given that the [s]tate did not limit its legal theory to the facts constituting the trafficking offense and, to the contrary, provided the jury with sufficiently distinct factual bases upon which it could base [the d]efendant's conviction for possession, it is extremely unlikely that the jury based its verdict on a theory that [the d]efendant only possessed the cocaine at the time he sold it."); *Gwynne*, 2018-NMCA-033, ¶ 16 (noting that "the evidence established that [the d]efendant continued to possess the videos after he had completed the act of manufacturing them"). We therefore conclude the facts presented at trial establish that the jury reasonably could have inferred an independent factual basis for Defendant's manufacturing and possession charges. *See Gwynne*, 2018-NMCA-033, ¶ 12. Accordingly, Defendant's actions in manufacturing and possessing the photograph of A.M. bear sufficient indicia of distinctness to support a finding that they were not unitary and therefore do not violate double jeopardy.

## B.    Defendant's CSPM Convictions

**{40}** The jury also convicted Defendant on five counts of CSPM pursuant to Section 30-9-11(E)(1), including two counts based on digital penetration of A.M.'s vagina and one count based on penile penetration of A.M.'s vagina. Defendant argues these three CSPM convictions violate double jeopardy, contending that the penetrations of A.M.'s vagina were not sufficiently distinct to warrant separate charges. Defendant thus contends that two CSPM convictions must be vacated. Defendant's argument presents

a unit of prosecution issue. *See Herron v. State*, 1991-NMSC-012, ¶ 6, 111 N.M. 357, 805 P.2d 624.

**{41}** We review unit of prosecution claims in the context of Section 30-9-11 by reference to *Herron*, in which our Supreme Court observed that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for each penetration occurring during a continuous sexual assault." *Herron*, 1991-NMSC-012, ¶ 8. Accordingly, we must determine whether Defendant's acts were "separated by sufficient indicia of distinctness to justify multiple punishments" under Section 30-9-11(E)(1). *See State v. Ramirez*, 2018-NMSC-003, ¶ 47, 409 P.3d 902 (internal quotation marks and citation omitted); *see also id.* (observing that the second step of a unit of prosecution case involves "determin[ing] whether a defendant's acts are separated by sufficient indicia of distinctness" to justify multiple punishments under the same statute" (internal quotation marks and citation omitted)). To determine whether Defendant's acts were separated by sufficient indicia of distinctness, we consider the *Herron* factors. *See* 1991-NMSC-012, ¶ 15. We conclude Defendant's acts were separated by sufficient indicia of distinctness to justify three CSCP convictions.

**{42}** We understand Defendant to argue that the penile and digital penetrations were not sufficiently distinct because they were part of a "continuing attack" and that Defendant penetrated A.M.'s vagina with his fingers and penis at the same time—thus supporting only one conviction under *Herron. See id.* ¶ 13 ("[W]e cannot say as a matter of law that digital penetration of the vagina followed immediately by penile penetration of the same orifice constitutes two punishable acts under Section 30-9-11."). We are unpersuaded, and explain.

**{43}** A.M. testified that Defendant penetrated her vagina with his penis "two times" and that on these occasions he simultaneously penetrated her vagina digitally. But A.M. also immediately clarified that he penetrated her vagina digitally "multiple times." This testimony indicates that Defendant penetrated A.M. digitally on more than the two occasions, and he penetrated her with his penis. This is consistent with A.M.'s other testimony, which supports three distinct occasions of digital penetration of her vagina: two on one day and a third on a different day. A.M. testified that Defendant would penetrate her, she would tell him to stop, Defendant would stop, an hour would go by, and Defendant would come back and do it again. The "temporal proximity" of these digital penetrations, separated by one hour, indicates that these acts were separated by sufficient indicia of distinctness. *See Herron*, 1991-NMSC-012, ¶ 15. In addition, A.M. testified that Defendant digitally penetrated her vagina with his fingers on separate days. *See id.*

**{44}** Accordingly, even if we were to assume that the two distinct occasions on which Defendant penetrated A.M.'s vagina with his penis and fingers simultaneously support only one CSCP conviction per occasion, there is sufficient evidence to support one conviction for penile penetration for one of these occasions and one conviction for digital penetration for the other. And apart from these two occasions on which

Defendant penetrated A.M.'s vagina with his fingers and penis simultaneously, A.M.'s testimony indicates that Defendant committed yet another distinct act of digital penetration on a third occasion. Viewing the evidence in the light most favorable to the verdict, we conclude sufficient evidence exists to establish three distinct penetrations of A.M.'s vagina: two counts of digital penetration and one count of penile penetration. *See McClendon*, 2001-NMSC-023, ¶¶ 3, 5. Accordingly, these three CSPM convictions do not violate double jeopardy.

**CONCLUSION**

**{45}**   Based on the foregoing, we affirm.

**{46}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**